# STATE OF CONNECTICUT *v.* JOSEPH MOORE
## (AC 33101)

DiPentima, C. J., and Gruendel and Alvord, Js.

Argued January 9—officially released April 9, 2013

*Deborah G. Stevenson*, special public defender, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, was *Matthew C. Gedansky*, state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. Following a trial, a jury found the defendant, Joseph Moore, guilty of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and commission of a class B felony with a firearm in violation of General Statutes § 53-202k. The defendant then stipulated, in response to a part B information, that the aforementioned offenses were committed while on release in violation of General Statutes § 53a-40b. The defendant also pleaded guilty to a second part B information charging him with being a persistent felony offender in violation of General Statutes § 53a-40 (f). The court rendered a judgment of conviction in accordance therewith, from which the defendant now appeals.

On appeal, the defendant claims that (1) the court improperly denied his motion for a judgment of acquittal because the evidence adduced at trial was insufficient to establish that he threatened the use of a firearm at the time of the robbery and (2) his sentence enhancement pursuant to § 53a-40 (f) runs afoul of the rule set forth in *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and its progeny. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 1 p.m. on July 13, 2009, the defendant entered the New Alliance Bank in Columbia wearing a white tank top and dark sweatpants. Branch manager Penny Ritchie and tellers Maria DePietro and Michelle LaLiberty, who were working at the bank that day, observed the defendant approach the check writer station. The defendant then asked another patron, David Woodward, where the withdrawal slips were located, at which point the defendant took a slip from the station and began to write on it. Photographs from the bank's security cameras introduced into evidence depict the defendant writing on a piece of paper at the check writer station and then approaching the teller station with the piece of paper in his hand.

The defendant approached Ritchie and handed her a deposit slip that read, "Give cash. I have gun." When Ritchie explained that she was not a teller, the defendant ordered her to " '[g]ive me the cash. Give it now.' " Ritchie then slid the deposit slip to DePietro, who unlocked her teller drawer. As she did, the defendant demanded, " '[h]urry up, hurry up,' " and reached over the counter. DePietro then handed the defendant $3500 in cash.

The defendant immediately exited the bank and Woodward followed. As Ritchie locked the bank's doors and DiPietro called 911, LaLiberty closed the bank's

drive-through window. As she did, she saw the defendant walking at the rear of the bank to a grassy strip between the drive-through lane and an adjacent firehouse. LaLiberty wrote down a description of the defendant at that time. Approximately six hours later, the Connecticut state police apprehended the defendant in a grassy area near Route 66 in Columbia. The defendant subsequently reviewed and executed a waiver of *Miranda* rights[1] form and agreed to speak with Detective Derek Kasperowski. The defendant then admitted to robbing the bank and stated that he remembered "smoking crack before going into the bank, going to the bank teller and telling her to give him money." Although no firearm was found on the defendant's person or the surrounding area, the $3500 in cash was recovered.

The defendant was arrested and charged, by substitute information, with robbery in the first degree in violation of § 53a-134 (a) (4) and commission of a class B felony with a firearm in violation of § 53-202k. The defendant also was charged, in separate part B informations, with committing those offenses while on release in violation of § 53a-40b and with being a persistent felony offender in violation of § 53a-40 (f). After a trial, the jury found the defendant guilty of both robbery in the first degree and the commission of a class B felony with a firearm. The court subsequently found, consistent with the written stipulation entered into by the defendant, that the defendant committed those offenses while on release in violation of § 53a-40b.[2] In addition,

---

[1] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] In the written stipulation signed by the defendant and dated October 25, 2010, the defendant acknowledged that "[b]efore July 13, 2009, at approximately 1:13 p.m., the defendant had been arrested and released pursuant to [General Statutes] §§ 54-63a to 54-63g inclusive, or §§ 54-64a [to] 54-64c inclusive, other than in violation of [General Statutes] § 53a-222, on two other charges and those charges remained pending on July 13, 2009, which would expose the defendant, if he is found guilty, to the enhancement pursuant to General Statutes § 53a-40b, to wit: On May 18, 2009, the [defen-

the defendant pleaded guilty to being a persistent felony offender in violation of § 53a-40 (f). The court sentenced the defendant to a total effective term of thirty-four years incarceration, and this appeal followed.

I

The defendant claims that the court improperly denied his motion for a judgment of acquittal because the evidence adduced at trial was insufficient to establish that he threatened the use of a firearm during the commission of the robbery. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . [A reviewing court] cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . [P]roof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *St. Cyr*, 100 Conn. App. 189,

dant] was arrested by the East Hartford police department and released pursuant to General Statutes § 54-63c; or On June 10, 2009, the [defendant] was arrested by the Connecticut state police and released pursuant to General Statutes § 54-63c."

194–95, 917 A.2d 578, cert. denied, 282 Conn. 915, 924 A.2d 140 (2007).

To convict the defendant of robbery in the first degree, § 53a-134 (a) (4) required the state to prove beyond a reasonable doubt that the defendant, while "in the course of the commission of the crime of robbery . . . displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." Similarly, § 53-202k required the state to prove that the defendant committed "any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm . . . ." The defendant in this appeal does not contest the jury's finding that he committed the robbery in question. Rather, his sole claim is that the evidence does not support a finding that he represented by his words or conduct that he possessed a firearm during the course of that robbery.

Contrary to the defendant's contention, we conclude that a reasonable view of the evidence plainly exists that supports the jury's finding that the defendant threatened the use of a firearm while committing the robbery. Ritchie, DiPietro and LaLiberty all testified at trial that the defendant entered the bank, proceeded to the check writer station and wrote on a deposit slip, which he then handed to Ritchie. Security cameras at the bank produced photographs of the defendant engaging in that act, which were introduced into evidence. The deposit slip, which contained the handwritten message "Give cash. I have gun," also was introduced into evidence. Ritchie, DiPietro and LaLiberty all verified in their testimony at trial that the deposit slip introduced into evidence was the same note that the defendant handed to Ritchie during the commission of the robbery. They further testified that because the defendant

had indicated that he possessed a gun, they immediately complied with his demand in order to prevent him from shooting anyone. On that documentary and testimonial evidence, which the jury was free to credit; see *State* v. *Wortham*, 80 Conn. App. 635, 642, 836 A.2d 1231 (2003), cert. denied, 268 Conn. 901, 845 A.2d 406 (2004); the jury reasonably could conclude that the defendant threatened the use of a firearm when, through his words and conduct, he represented that he possessed a firearm and demanded cash from bank employees.

The defendant nevertheless posits that "[a]s a matter of law, the defendant could not be convicted of robbery in the first degree, or of an enhanced sentence, when the state failed to prove that he was armed during the commission of the robbery." He is mistaken. Under Connecticut law, the state is not required to prove that a defendant actually possessed a firearm to obtain a conviction under § 53a-134 (a) (4). Our appellate courts repeatedly have rejected that contention. See, e.g., *State* v. *Dolphin*, 195 Conn. 444, 449, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985); *State* v. *Moore*, 100 Conn. App. 122, 132–33, 917 A.2d 564 (2007). As our Supreme Court held in *State* v. *Hawthorne*, 175 Conn. 569, 573, 402 A.2d 759 (1978), under § 53a-134 (a) (4), "a defendant need not have an operable firearm; in fact, he need not even have a gun. He need only *represent* by his words or conduct that he is so armed."[3] (Emphasis in original.) Accord *State*

---

[3] The defendant claims that, in *State* v. *Tomlin*, 266 Conn. 608, 623, 835 A.2d 12 (2003), our Supreme Court held that any conviction for robbery in the first degree requires proof that a defendant actually possessed a firearm. *Tomlin* does not stand for that broad proposition, nor does it concern the offense of robbery; *Tomlin* involved a conviction for manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-55a (a) and 53a-55 (a) (3). Id., 610. In its discussion of lesser included offenses, *Tomlin* quotes *State* v. *Dolphin*, 203 Conn. 506, 517–18, 525 A.2d 509 (1987), as follows: "Robbery in the second degree requires that in the course of the commission of the crime [of robbery] or of immediate flight therefrom, [the accused] or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon

v. *Bradley*, 39 Conn. App. 82, 93 n.10, 663 A.2d 1100 (1995) ("[a] conviction [under § 53a-134 (a) (4)] can result whether [or not] the defendant possessed a gun"), cert. denied, 236 Conn. 901, 670 A.2d 322 (1996). The Supreme Court rejected a similar challenge to sentence enhancements pursuant to § 53-202k, noting that the state need not prove that a defendant possessed a firearm "capable of discharging a shot." *State* v. *Brown*, 259 Conn. 799, 810, 792 A.2d 86 (2002). As the court explained, § 53-202k contains two elements: "The first element is that the defendant has committed a class A, B or C felony. . . . The second element . . . is that the defendant used, was armed with and threatened the use of, displayed, or represented by his words that he possessed a firearm as 'firearm' is defined in § 53a-3 (19)." Id., 807–808. The court ultimately held that a violation of § 53-202k may be proven by the representations of a defendant when no proof exists that the defendant actually possessed an operable firearm. Id., 810.

In light of the foregoing, the defendant's claim fails. Accordingly, we conclude that the court properly denied his motion for a judgment of acquittal.

## II

The defendant also maintains that his sentence enhancement pursuant to § 53a-40 (f) runs afoul of the

---

or a dangerous instrument. . . . Robbery in the first degree . . . however, requires that a person or another participant, in committing a robbery or in immediate flight therefrom, be armed with a deadly weapon." (Internal quotation marks omitted.) *State* v. *Tomlin*, supra, 623. Yet, the actual language of *Dolphin* indicates that the aforementioned proposition applies to prosecutions under § 53a-134 (a) (2), as the full quote from that decision states that "[r]obbery in the first degree *in violation of § 53a-134 (a) (2)*, however, requires that a person or another participant, in committing a robbery or in immediate flight therefrom, be armed with a deadly weapon." (Emphasis added.) *State* v. *Dolphin*, supra, 518; see also *State* v. *Bradley*, 39 Conn. App. 82, 93, 663 A.2d 1100 (1995) (possession of operable firearm "is a necessary element of robbery pursuant to § 53a-134 [a] [2]"), cert. denied, 236 Conn. 901, 670 A.2d 322 (1996). That precedent plainly is inappo-

rule set forth in *Apprendi* v. *New Jersey*, supra, 530
U.S. 466, and its progeny.[4] The defendant failed to
preserve this claim before the trial court and now seeks
review under *State* v. *Golding*, 213 Conn. 233, 239–40,
567 A.2d 823 (1989). We review his claim because the
record is adequate for review and the claim is of consti-
tutional magnitude. See *State* v. *Reynolds*, 126 Conn.
App. 291, 298, 11 A.3d 198 (2011).

The following additional facts are relevant to this
claim. On December 14, 2010, the defendant appeared
before the court for sentencing. At that time, he pleaded
guilty to being a persistent felony offender in violation
of § 53a-40 (f). As the court clerk stated: "[P]ursuant
to § 53a-40 (f) . . . Matthew C. Gedansky, state's sttor-
ney for the judicial district of Tolland, complains that
[the defendant] is a persistent felony offender and
charges that the [defendant] stands convicted of a fel-
ony other than a class D felony and has been at separate
times prior to the commission of the present felony
twice convicted of a felony other than a class D felony;
to wit, on March 26, 2008, in the Superior Court [geo-
graphical area number fourteen] in Hartford the [defen-
dant] was convicted of possession of narcotics in
violation of . . . General Statutes § 21a-279 (a). On
January 31, 1996, in the Superior Court, judicial district
of Hartford, the [defendant] was convicted of risk of
injury [to a child] in violation of . . . General Statutes
§ 53-21. On February 6, 1996, in the Superior Court

site to the present case, which concerns a prosecution under § 53a-134
(a) (4).

[4] In *Apprendi*, the United States Supreme Court held that, "[o]ther than
the fact of a prior conviction, any fact that increases the penalty for a crime
beyond the prescribed statutory maximum must be submitted to a jury, and
proved beyond a reasonable doubt." *Apprendi* v. *New Jersey*, supra, 530
U.S. 490. *Apprendi* "thus applies to factual findings that serve to enhance
a defendant's maximum sentence beyond that allowable under the verdict
alone." *State* v. *Walker*, 90 Conn. App. 737, 742, 881 A.2d 406, cert. denied,
275 Conn. 930, 883 A.2d 1252 (2005).

[geographical area number twelve] in Manchester, the [defendant] was convicted of sale of narcotics in violation of . . . General Statutes § 21a-277 (a) and failure to appear in the first degree in violation of . . . General Statutes § 53a-172. On July 29, 1985, in the Superior Court, judicial district of Hartford, the [defendant] was convicted of robbery in the first degree in violation of . . . § 53a-134 (a) (4). How do you plead, guilty or not guilty?" The defendant answered, "Guilty." The court then thoroughly canvassed the defendant. The defendant at that time specifically indicated that he understood that, by entering his plea, he was giving up, inter alia, his rights to a jury trial, to confrontation and to remain silent. The defendant also indicated that he understood that the sentence enhancement under § 53a-40 (f) would increase his exposure from twenty to twenty-five years incarceration for the offense of robbery in the first degree. After canvassing the defendant, the court concluded that the defendant's plea "is voluntary and understandably made with adequate assistance of counsel and strong factual basis."

On appeal, the defendant contends that his constitutional rights, as articulated in *Apprendi* and its progeny, were violated "when the court rather than the jury considered factors, other than the defendant's previous convictions" that allegedly "contributed to the increase of the defendant's sentence beyond that approved by the jury verdict or guilty plea alone." We readily reject that claim because it is well established that when a defendant knowingly, voluntarily and intelligently pleads guilty to a sentence enhancement provision, that defendant waives any right to a jury trial thereon.

For example, in *Apprendi*, the United States Supreme Court distinguished its earlier decision in *Almendarez-Torres* v. *United States*, 523 U.S. 224, 239, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), noting that "[b]ecause

Almendarez-Torres had *admitted* the three earlier convictions for aggravated felonies—all of which had been entered pursuant to proceedings with substantial procedural safeguards of their own—no question concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact was before the Court." (Emphasis in original.) *Apprendi* v. *New Jersey*, supra, 530 U.S. 488. Likewise, in *Blakely* v. *Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), the court emphasized that "[o]ur precedents make clear . . . that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" (Emphasis in original.)

In *State* v. *Michael A.*, 297 Conn. 808, 819–21, 1 A.3d 46 (2010), the Connecticut Supreme Court expressly relied on that federal precedent in concluding that a defendant who pleads guilty to a sentence enhancement pursuant to the persistent felony offender statute, § 53a-40, necessarily waives any right to have a jury make the requisite factual findings thereunder. As the court explained, "[b]y entering his plea of nolo contendere, the defendant waived his right to a jury trial under the entire persistent serious felony offender statutory scheme—a scheme exclusively related to sentence enhancement. . . . Under the defendant's plea, therefore, he waived his right to a jury trial . . . ." (Citation omitted.) Id., 821; see also *State* v. *Velasco*, 253 Conn. 210, 224, 751 A.2d 800 (2000) ("in pleading guilty to a persistent offender charge, the accused waives several constitutional rights, including the right to a jury determination of ultimate facts that trigger the enhanced sentence" [internal quotation marks omitted]); *State* v. *Reynolds*, supra, 126 Conn. App. 294 ("[w]e conclude that the defendant's guilty plea on the persistent serious

felony offender charge set forth in part B of the information necessarily and validly waived his right to a jury determination as to . . . his guilt under part B of the information").

The record substantiates the court's finding that the defendant knowingly, intelligently and voluntarily pleaded guilty to being a persistent felony offender in violation of § 53a-40 (f), and the defendant does not argue otherwise in this appeal. As a result, he cannot demonstrate that a constitutional violation clearly exists, as required under *Golding*'s third prong.

The judgment is affirmed.

In this opinion the other judges concurred.