STATE OF CONNECTICUT *v.* MIGUEL GONZALEZ
(AC 33296)

Alvord, Bear and Sheldon, Js.

---

Argued February 19—officially released July 23, 2013

Lisa J. Steele, special public defender, for the appellant (defendant).

Matthew A. Weiner, deputy assistant state's attorney, with whom, on the brief, were John C. Smriga, state's attorney, and Joseph J. Harry, senior assistant state's attorney, for the appellee (state).

Opinion

BEAR, J. The defendant, Miguel Gonzalez, appeals from the judgment of conviction, rendered after a jury trial, of interference with a search in violation of General Statutes § 54-33d. On appeal, the defendant claims (1) that the evidence was insufficient to convict him of the crime of interference with a search, and (2) that the trial court abused its discretion by refusing to sever his trial on that charge from his trial on the charge of murder in connection with which the search at issue was conducted. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to this appeal. In September 2007, the defendant and the victim, Miguel Vasquez, had a verbal altercation outside of a bar in Bridgeport. On October 7, 2007, the victim was shot and killed at a party in the basement of a home (home) owned by Mokeema Garcia. The victim was shot from approximately six to twelve inches away.

Nairobi Ortiz, the victim's niece, testified that she saw the defendant at a bar on the night of the party, before seeing him later at the party. She testified that while the defendant was at the bar he stared at the victim, and that he was wearing a brown baseball hat and glasses. Richard Serrano testified that he saw the defendant at around midnight on that same night. Serrano testified that, while he was on his way to the party, he saw the defendant walking out of an alleyway near

the home carrying a gun. Nairobi Ortiz testified that she saw the defendant being denied entry to the party. Erica Ortiz, another of the victim's nieces, also testified that she saw the defendant being denied entry to the party, but that she later saw him at the party. After the shooting, Garcia found a brown baseball hat and a pair of glasses on his property. Serrano testified that he saw the defendant the next day, at which time the defendant threatened him "to watch [his] mouth or the same thing was going to happen that happened in the basement . . . ." Serrano testified that the defendant had a gun in his hand at this time.

The hat and glasses were sent to the state police forensic laboratory for DNA testing. The results included the defendant as a possible contributor to the DNA on the hat and eliminated him as a possible contributor to the DNA on the glasses. On August 25, 2008, as part of the murder investigation, the state obtained a search warrant to use a buccal swab to obtain a DNA sample from the defendant.[1] At the time, the defendant was being held in a cell at the Bridgeport Police Department awaiting arraignment in an unrelated matter. On August 26, 2008, after the defendant was approached by detectives who had come to execute the warrant to seize a buccal swab from the interior of his cheek, initially he vacillated between agreeing and refusing to comply with the warrant. The defendant ultimately refused to comply, causing the detectives to seek advice from their supervisor. Upon returning to the defendant's cell, accompanied by other officers, the detectives explained to the defendant that he did not have a right to speak to an attorney before they executed the warrant and that if he did not comply voluntarily, they would execute the warrant forcibly. The

---

[1] "[A] [b]uccal swab is similar to a big cotton swab, and . . . is swabbed inside the mouth to get skin cells for DNA analysis." *State* v. *Morgan*, 140 Conn. App. 182, 193 n.9, 57 A.3d 857 (2013).

defendant persisted in his refusal to comply. Several officers entered the cell to assist with the execution of the warrant and the defendant resisted by "struggling," "flailing, fighting," and "basically fighting them not to stay down on the . . . bed." Three of the officers present in the cell held the defendant down on the bed: one officer held his legs and feet, one officer held his stomach area, and one officer held his nose and jaw line. The defendant refused to open his mouth. The officer holding the defendant's nose and jaw line pinched his nose closed to prevent him from breathing through his nose and force him to breathe through his mouth. Pinching the defendant's nose closed forced him to open his mouth. A detective entered the cell, stood over the defendant and swabbed his open mouth. The officers and detectives then exited the cell. DNA tests on the swab and the hat found at the home established that the defendant was a possible contributor to the DNA found on the hat. On August 26, 2008, the defendant was charged with interference with a search. Subsequently, the defendant was charged in a separate information with the victim's murder.

On September 22, 2009, the state filed a motion to consolidate for trial the information charging interference with a search and the information charging murder, which the court, *Hauser, J.*, granted. On November 10, 2009, the defendant filed a motion to sever the two cases, arguing that consolidation of the charges for trial would result in him suffering substantial prejudice because the two offenses involved separate and unrelated incidents. He claimed that the murder charge involved a brutal and shocking crime, and that the jury would use video evidence of the interference with a search charge cumulatively to convict him of both charges. On November 12, 2009, the court, *Hauser, J.*, denied the defendant's motion to sever, incorporating his prior decision on the state's motion to consolidate

and further elaborating that the defendant failed to demonstrate how the victim's murder was especially brutal. During jury selection for the joined cases, defense counsel made an oral motion for a bench trial on the interference with a search charge, which the court, *Hauser, J.*, denied. The consolidated cases were tried to a jury, which found the defendant guilty of interference with a search. The jury could not reach a verdict on the murder charge, which resulted in a mistrial on that charge. The court rendered judgment in accordance with the jury's verdict. This appeal followed.

I

The defendant's first claim on appeal is that the evidence before the court was insufficient to prove him guilty of interference with a search pursuant to § 54-33d, which provides in relevant part as follows: "Any person who forcibly assaults, resists, opposes, impedes, intimidates or interferes with any person authorized to serve or execute search warrants or to make searches and seizures while engaged in the performance of his duties with regard thereto or on account of the performance of such duties, shall be fined not more than one thousand dollars or imprisoned not more than one year or both . . . ." Specifically, the defendant argues that the evidence was insufficient to prove either (A) that his refusal to open his mouth or his involuntary struggles to breathe constituted forcible interference with a search; or (B) that such use of force, if any, was intentional. We are not persuaded.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative

force of the evidence established guilt beyond a reasonable doubt. . . . [A reviewing court] cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . [P]roof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal." (Internal quotation marks omitted.) *State* v. *Moore*, 141 Conn. App. 814, 818, 64 A.3d 787 (2013).

"It is axiomatic that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [jury's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Reid*, 123 Conn. App. 383, 391–92, 1 A.3d 1204, cert. denied, 298 Conn. 929, 5 A.3d 490 (2010).

A

The defendant claims that neither his refusal to open his mouth nor his involuntary struggle to breathe constituted forcible interference with a search pursuant to § 54-33d. Specifically, the defendant argues that the "forcibly" element of interference with a search necessarily requires the use of physical force, such as engaging in a physical struggle, in order to prove that his acts of resistance, opposition, impeding or otherwise interfering with a search violated the statute. The defendant also argues that the evidence adduced at trial was insufficient to prove that he used physical force in refusing to open his mouth or involuntarily struggling to breathe. We are not persuaded.

The jury could reasonably have found that the defendant resisted, opposed, impeded and interfered with the detectives and officers when they attempted to obtain a sample of DNA from him, by struggling with them, flailing his arms and legs, and otherwise physically resisting their efforts. The defendant's resistance caused the detectives and officers to pin him down on the bed in his cell to prevent him from continuing to struggle and to resist their efforts to execute the warrant. The jury could also reasonably have found that the defendant actively refused to open his mouth as part of his efforts to resist and to interfere with the detectives' attempt to obtain his DNA sample, and that the defendant exerted physical force by clenching his jaws and related facial muscles to keep his mouth closed, thereby denying them access to the inside of his cheeks. The detectives were able to open the defendant's mouth only by pinching his nose closed, which action constricted the defendant's nasal air passage and forced him to breathe through his open mouth. We conclude, therefore, that the evidence was sufficient to prove that the defendant used physical force to resist, oppose, impede and to interfere with the execution of the search warrant.

### B

The defendant also claims that the evidence was insufficient to demonstrate that he intentionally acted forcibly to interfere with the search. Specifically, the defendant argues that the evidence was insufficient to prove that he acted intentionally, which is an element of § 54-33d that must be proven beyond a reasonable doubt. We are not persuaded.

"A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ." General Statutes § 53a-3 (11). "It is axiomatic that the definition of intent

as provided in § 53a-3 (11) embraces both the specific intent to cause a result and the general intent to engage in proscribed conduct." (Internal quotation marks omitted.) *State* v. *Leggett*, 94 Conn. App. 392, 411, 892 A.2d 1000, cert. denied, 278 Conn. 911, 899 A.2d 39 (2006).

Here, the jury could reasonably have found on the basis of the evidence that the defendant intentionally acted forcibly to resist, oppose, impede and interfere with the detectives and officers when they attempted to obtain a sample of DNA from the inside of his cheeks when he struggled with them, flailed his arms and legs, and otherwise physically resisted their efforts, including clenching his jaws shut. The jury also reasonably could have found that the defendant, after being given the opportunity to provide his DNA sample, actively refused to cooperate despite being told that the sample forcibly would be taken from him if necessary, and that his conduct demonstrated that he intended to use force to achieve the result of not providing his DNA sample to the state. In summary, the evidence was sufficient for the jury reasonably to have found that the defendant had the requisite intent to engage in the described conduct and to achieve his desired result, i.e. forcibly to resist, oppose, impede and otherwise to interfere with the search in order to avoid providing his DNA to the state, and the intent requirements of § 54-33d thus were satisfied.

For the foregoing reasons, we conclude that the jury reasonably could have found that the evidence established the elements of the defendant's guilt of interference with a search beyond a reasonable doubt.

II

The defendant claims that the court abused its discretion in denying his motion to sever the interference with a search charge from the murder charge because

evidence was not cross admissible in the two cases.[2] The state argues that evidence of the interference with a search charge was admissible in the murder case as consciousness of guilt evidence, and that evidence of the murder charge was admissible in the interference with a search case to prove the defendant's motive for interfering with the search. We agree with the state.

"[W]hen charges are set forth in separate informations, presumably because they are not of the same character, and the state has moved in the trial court to join the multiple informations for trial, the state bears the burden of proving that the defendant will not be substantially prejudiced by joinder pursuant to Practice Book § 41-19. The state may satisfy this burden by proving, by a preponderance of the evidence, either that the evidence in the cases is cross admissible or that the defendant will not be unfairly prejudiced pursuant to the *Boscarino*[3] factors." (Footnote omitted.) *State* v. *Payne*, 303 Conn. 538, 549–50, 34 A.3d 370 (2012). "[I]n deciding whether to [join informations] for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb." (Internal quotation marks omitted.) *State* v. *Morgan*, 140 Conn. App. 182, 203, 57 A.3d 857 (2013).

"A long line of cases establishes that the paramount concern is whether the defendant's right to a fair trial will be impaired. Therefore, in considering whether joinder is proper, this court has recognized that, where evidence of one incident would be admissible at the

[2] Alternatively, the defendant argues that joinder of the two charges for trial substantially prejudiced him because of the violence inherent in the murder charge and the complexity of the trial of that charge. Because our discussion of the cross admissibility of the evidence is dispositive of the claimed error, we do not reach the defendant's claim of substantial prejudice under the *Boscarino* factors. See *State* v. *Payne*, 303 Conn. 538, 549–50, 34 A.3d 370 (2012).

[3] *State* v. *Boscarino*, 204 Conn. 714, 723, 529 A.2d 1260 (1987).

trial of the other incident, separate trials would provide the defendant no significant benefit. . . . Under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial. . . . Accordingly, we have found joinder to be proper where the evidence of other crimes . . . [was] cross admissible at separate trials. . . . Where evidence is cross admissible, therefore, our inquiry ends." (Internal quotation marks omitted.) Id., 201–202.

"A trial court may admit [e]vidence that an accused has taken some kind of evasive action to avoid detection for a crime, such as . . . concealment of evidence . . . [which] is ordinarily the basis for a charge on the inference of consciousness of guilt. . . . In seeking to introduce evidence of a defendant's consciousness of guilt, [i]t is relevant to show the conduct of an accused . . . which may be inferred to have been influenced by the criminal act." (Internal quotation marks omitted.) *State v. Moye*, 119 Conn. App. 143, 150, 986 A.2d 1134, cert. denied, 297 Conn. 907, 995 A.2d 638 (2010).

"Generally speaking, all that is required is that . . . evidence [of consciousness of guilt] have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render [such] evidence . . . inadmissible but simply constitutes a factor for the jury's consideration. . . . The fact that the evidence might support an innocent explanation as well as an inference of consciousness of guilt does not make [the admission of evidence of consciousness of guilt] erroneous. . . . Moreover, [t]he court [is] not required to enumerate all the possible innocent explanations offered by the defendant. . . . [I]t is the province of the jury to sort through any ambiguity in the evidence in order to determine whether [such evidence] warrants the inference that [the defendant] possessed a guilty conscience." (Citation omitted; internal quotation

marks omitted.) *State* v. *Coccomo*, 302 Conn. 664, 670, 31 A.3d 1012 (2011).

"Evidence of other crimes, wrongs or acts of a person is admissible . . . to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of a crime, or to corroborate crucial prosecution testimony." Conn. Code Evid. § 4-5 (b).[4]

The jury reasonably could have found the evidence of the defendant's interference with a search charge indicative of the defendant's consciousness of guilt in the murder case. In particular, the jury could have found, from the defendant's interference with the execution of the search warrant, that the defendant did not want to provide a DNA sample because it would support the state's claim that he was guilty of the murder. As previously set forth, "[t]he fact that the evidence might support an innocent explanation as well as an inference of consciousness of guilt does not make [the admission of evidence of consciousness of guilt] erroneous." (Internal quotation marks omitted.) *State* v. *Coccomo*, supra, 302 Conn. 670. Additionally, the jury reasonably could have found the evidence of the murder indicative of the defendant's motive for interfering with the execution of the search warrant in the interference

---

[4] Section 4-5 of the Connecticut Code of Evidence provides: "(a) Evidence of other crimes, wrongs, or acts inadmissible to prove character. Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character or criminal tendencies of that person.

"(b) When evidence of other crimes, wrongs or acts is admissible. Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of a crime, or to corroborate crucial prosecution testimony.

"(c) Specific instances of conduct when character in issue. In cases in which character or a trait of character of a person in relation to a charge, claim or defense is in issue, proof shall be made by evidence of specific instances of the person's conduct."

with a search case. "Evidence of other crimes, wrongs or acts of a person is admissible . . . to prove . . . motive . . . ." Conn. Code Evid. § 4-5 (b). Thus, we are not persuaded by the defendant's claim that the evidence was not cross admissible in these two cases. Accordingly, we conclude that the court properly exercised its discretion in granting the state's motion to consolidate the charges for trial and in denying the defendant's motion for a separate trial on each charge.

The judgment is affirmed.

In this opinion the other judges concurred.