JOSEPH MOORE *v.* COMMISSIONER
OF CORRECTION
(SC 20252)

Robinson, C. J., and McDonald, D'Auria, Kahn and Ecker, Js.

*Syllabus*

The petitioner, who had been convicted of robbery in the first degree and
the commission of a class B felony with a firearm, sought a writ of
habeas corpus, claiming that his trial counsel, O, had rendered ineffective
assistance by failing to adequately advise him during pretrial negotiations

---

[8] The commission puts undue legal weight on the fact that the resolution
was put on the city council's consent calendar and was adopted without
modification or change. The commission has not identified any basis to
conclude that a member of the city council could not have asked to discuss
or amend the resolution had he or she wanted to do so. The record reflects
that the resolution was available for public discussion and public view, and
that, by being placed on the consent calendar, "*unless a city-elected official
asked for it to be removed from the consent calendar*, it would just get
approved without discussion . . . ." (Emphasis added.) Indeed, the majority
leader of the city council testified that the resolution "is always subject
to full discussion, full public comment, full information gathering, people
vot[ing] in favor of it, people deciding to vote against it, amending it . . . ."
There is nothing in the record to suggest that council members' authority
to act independently with respect to voting on the resolution, or not voting
on it at all, was compromised.

Moore *v.* Commissioner of Correction

when he had purportedly expressed a misunderstanding of the law regarding his maximum sentencing exposure. The petitioner had rejected three plea offers, all of which called for him to plead guilty to robbery in the first degree in exchange for either a ten or fifteen year prison sentence, and proceeded to trial under the belief that the state could prove only that he was guilty of robbery in the third degree and that the maximum sentence he deserved for that offense was five years' imprisonment. The petitioner claimed that O's performance was deficient insofar as O had failed to advise him that, if he were convicted only of the lesser included offense of robbery in the third degree, his maximum sentence would nonetheless be as severe as or exceed the sentences contained in the plea offers due to certain sentence enhancements with which the petitioner also had been charged. The habeas court rendered judgment denying the habeas petition, concluding, inter alia, that the petitioner had failed to meet his burden of establishing that O did not advise him of the maximum sentencing exposure for robbery in the third degree with enhancements. The trial court thereafter denied the petitioner's petition for certification to appeal, and the petitioner appealed to the Appellate Court, which dismissed the appeal. On the granting of certification, the petitioner appealed to this court. *Held* that the petitioner could not prevail on his ineffective assistance claim because he failed to establish that O had not advised him about his maximum sentencing exposure for a conviction of robbery in the third degree, and, accordingly, the Appellate Court properly dismissed the petitioner's appeal; although counsel has an obligation to address an expressed, material misunderstanding of law that appears to influence a defendant's decision whether to accept a plea offer or to proceed to trial, neither the petitioner nor O could recall whether O specifically advised him about his potential exposure for robbery in the third degree, and the habeas court expressly credited O's testimony that he was reasonably certain that he would have told the petitioner that, even if he were convicted of robbery in the third degree, he would face a sentence of more than ten years' imprisonment in light of the sentence enhancements.

Argued September 11, 2020—officially released March 15, 2021*

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Cobb, J.*; judgment denying the petition; thereafter, the court, *Cobb, J.*, denied the petition for certification to appeal, and the peti-

* March 15, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Moore *v.* Commissioner of Correction

tioner appealed to the Appellate Court, *Lavine*, *Keller* and *Elgo*, *Js.*, which dismissed the appeal, and the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Michael W. Brown*, assigned counsel, for the appellant (petitioner).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Angela R. Macchiarulo*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ROBINSON, C. J. The principal issue in this certified appeal is whether a criminal defense attorney who is aware that his or her client has a legal misunderstanding material to the decision of whether to accept a plea bargain has a duty to provide advice to address that misunderstanding. The petitioner, Joseph Moore, appeals, upon our grant of his petition for certification,[1] from the judgment of the Appellate Court dismissing his appeal from the judgment of the habeas court. The habeas court denied his petition for a writ of habeas corpus, in which he claimed that he had received ineffective assistance of counsel during plea negotiations prior to his criminal trial at which he was convicted of, among other crimes, robbery in the first degree. *Moore* v. *Commissioner of Correction*, 186 Conn. App. 254, 255–58, 270, 199 A.3d 594 (2018). On appeal, the petitioner claims that he did not receive effective assistance of counsel because his trial attorney did not adequately advise him of his maximum sentencing exposure if convicted at trial of the lesser included offense of robbery

---

[1] We granted the petitioner's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that trial counsel did not render ineffective assistance of counsel in advising the petitioner regarding the pretrial plea offers?" *Moore* v. *Commissioner of Correction*, 330 Conn. 970, 200 A.3d 700 (2019).

Moore *v.* Commissioner of Correction

in the third degree. Because the petitioner failed to
meet his burden of proving that trial counsel did not
advise him about his maximum exposure for a convic-
tion of the lesser included offense of robbery in the
third degree, we conclude that the petitioner cannot
prevail on his claim of ineffective assistance of trial
counsel. Accordingly, we affirm the judgment of the
Appellate Court.

The record reveals the following relevant facts and
procedural history, much of which is aptly recited in
the Appellate Court's opinion in this case. The petitioner
was arrested in 2009 after entering a New Alliance Bank
and demanding cash from the bank employees. Id., 256–
57. He was charged with robbery in the first degree
in violation of General Statutes § 53a-134 (a) (4) and
commission of a class B felony with a firearm in viola-
tion of General Statutes § 53-202k. The state also filed
a part B information charging the petitioner with (1)
committing the offenses while on release in violation
of General Statutes § 53a-40b, and (2) being a persistent
felony offender in violation of General Statutes § 53a-
40 (f). Id., 256. At his criminal trial, the petitioner did
not dispute having robbed the bank; his only contention
was that he did not write a note to the bank teller
stating '' '[g]ive cash. I have gun.' '' Id. The petitioner's
theory at trial was that he did not write the note and,
therefore, should be convicted of only the lesser
included offense of robbery in the third degree.[2] See

---

[2] ''At the habeas trial, [the petitioner's trial counsel, Douglas A. Ovian]
testified that the petitioner had taken a position that the note recovered at
the bank was not the note he had written and handed to the teller. Ovian
testified that it was the petitioner's position that the note he handed to the
teller never indicated that he had a gun, and that the teller had given him
back the note prior to his running from the bank and jumping into a river.
[Matthew C.] Gedansky [the prosecutor] indicated that the petitioner had
a theory that the police had invented the note on which the state relied;
Gedansky described this as a 'conspiracy theory.' Ovian also testified that
he recalled contacting a handwriting expert to see if his evaluation of the
note could give some support to the petitioner's theory. Ovian testified that
after the handwriting analyst reviewed a copy of the note, the handwriting

Moore *v.* Commissioner of Correction

id., 258 and n.2. The petitioner was, however, convicted of all the crimes charged after a jury trial and sentenced to a total effective term of thirty-four years of incarceration. Id., 256. The Appellate Court subsequently affirmed the petitioner's conviction on direct appeal. *State* v. *Moore*, 141 Conn. App. 814, 825, 64 A.3d 787, cert. denied, 309 Conn. 908, 68 A.3d 663 (2013).

In 2016, the petitioner filed an amended petition for a writ of habeas corpus, alleging that his trial counsel, Douglas A. Ovian, rendered ineffective assistance when he failed to advise the petitioner adequately during pretrial plea negotiations. *Moore* v. *Commissioner of Correction*, supra, 186 Conn. App. 257–58. "At the habeas trial on September 15, 2016, the habeas court heard testimony from Matthew C. Gedansky, the state's attorney in the petitioner's criminal case, [Ovian], and the petitioner. . . . There was testimony that three plea offers were made to the petitioner: an offer for ten years to serve with five years of special parole; an offer for ten years to serve with two years of special parole; and an offer made at a judicial pretrial conference with *Sullivan, J.*, offering the petitioner fifteen years to serve if he pleaded guilty to one count of robbery in the first degree.[3] Ovian testified that his notes indicated that he advised the petitioner to accept the offers and that he would never have told the petitioner to take this case to trial. In addition, Gedansky testified that he recalled Ovian telling him that Ovian had advised the petitioner to take the offer of ten years to serve with two years [of] special parole. The petitioner testified that he rejected these offers because he had faith the state might present

_____

analyst indicated to him that he thought it 'would not be a good idea to call him as a witness.' " *Moore* v. *Commissioner of Correction*, supra, 186 Conn. App. 258 n.2.

[3] "Gedansky testified that Ovian was able to persuade him to reduce his initial offer of ten years to serve with five years [of] special parole to ten years to serve with two years [of] special parole." *Moore* v. *Commissioner of Correction*, supra, 186 Conn. App. 258 n.3.

Moore *v.* Commissioner of Correction

him with a more favorable offer, and that he believed
he deserved only five years of imprisonment. There
also was differing testimony between Ovian and the
petitioner with respect to what Ovian advised as to the
potential maximum sentence the petitioner faced if he
was found guilty of all the charges, and whether he
advised the petitioner of the potential maximum sen-
tence he faced if he prevailed on a robbery in the third
degree theory at trial.[4]

"In a memorandum of decision filed [on] January 10,
2017, the habeas court denied the amended petition for
a writ of habeas corpus, finding that the petitioner had
failed to prove deficient performance or prejudice. In
particular, the habeas court found that 'Ovian had many
discussions with the petitioner throughout the course
of his representation,' and that Ovian 'went over the
state's evidence with [the petitioner] and he advised

_____

[4] "At the habeas trial, Ovian testified that he recalled there being a 'specific
discussion of numbers' with the petitioner about his exposure if he was
found guilty of robbery in the first degree. He also testified that his notes
contained a chart showing that the total exposure the petitioner faced
was forty-eight and one-half years, which included the enhancements the
petitioner likely faced for committing a crime while he was out on bond
and for being a persistent felony offender. Ovian then testified that he could
not definitively say that he advised the petitioner on the maximum sentence
the petitioner faced if convicted on the lesser included offense of robbery
in the third degree, but he indicated that he would not have led the petitioner
to believe that he would have avoided jail time, especially in light of the
conversations they had about the enhancements the petitioner faced.

"The petitioner testified that Ovian did not tell him that he may receive
a sentence of thirty-four years. He also said that he did not think that Ovian
had brought to his attention the potential maximum sentence if he was
found guilty on all the charges. The petitioner indicated that had he known
that he was going to receive a thirty-four year sentence, he would not have
gone to trial. Additionally, the petitioner testified that he was asking at trial
that he be found guilty of robbery in the third degree and felt that the
maximum sentence was five years; he testified that Ovian never told him
the maximum potential sentence for robbery in the third degree was twenty
years. He also testified, though, that he did not recall whether Ovian told
him that a five year sentence was a likely outcome." *Moore* v. *Commissioner
of Correction*, supra, 186 Conn. App. 259 n.4.

Moore *v.* Commissioner of Correction

the petitioner to take each of the deals as they were offered given the circumstances.' Additionally, the habeas court found that Ovian 'informed the petitioner that he was facing a maximum exposure of forty-eight and one-half years if convicted of robbery in the first degree due to the sentence enhancements the petitioner faced.' The habeas court concluded that Ovian relayed the offers to the petitioner, properly explained the state's evidence to him, and adequately warned him of the exposure he could face should he choose to go to trial. On January 17, 2017, the petitioner filed a petition for certification to appeal, which was later denied by the habeas court." (Footnotes in original; footnote omitted.) Id., 258–60.

The petitioner appealed from the denial of his petition for certification to appeal to the Appellate Court, claiming that the habeas court improperly rejected his claim that Ovian's "performance was deficient for failing to advise him of the maximum sentence he faced if he was successful in proving at trial that he was guilty only of committing the lesser included offense of robbery in the third degree." Id., 261. The Appellate Court declined to conclude that Ovian's performance was deficient as a result of his alleged "failure to inform the petitioner of the potential total sentence exposure he faced if he succeeded on the unlikely theory of [defense that the state could only] prov[e] robbery in the third degree . . . ." Id., 268. Instead, the Appellate Court held that the information and advice that Ovian did provide were adequate to allow the petitioner to make an informed decision regarding the state's plea offers and that any failure to further explain the consequences of proceeding to trial fell outside the objective standard of reasonableness of counsel's performance. Id., 268– 69. In so concluding, the Appellate Court opined that criminal defense attorneys should not be required "to advise their clients on the total sentence exposure they

Moore *v.* Commissioner of Correction

face for each and every possible defense scenario
. . . .'' Id., 265. Finally, in holding that Ovian's advice
was appropriate, the Appellate Court observed that any
effort made by Ovian to correct the petitioner's mis-
taken belief that he would receive a sentence of less
than ten years if he had been convicted of the lesser
included offense of robbery in the third degree would
have only encouraged his mistaken belief. Id., 269 n.10.
Accordingly, the Appellate Court rendered judgment
dismissing the appeal. Id., 270. This certified appeal
followed. See footnote 1 of this opinion.

On appeal, the petitioner claims that, although Ovian
rendered competent advice in clearly conveying all pre-
trial offers to the petitioner and advising him to accept
those offers, his assistance was nevertheless ineffective
because he failed to advise the petitioner on his maxi-
mum sentencing exposure for robbery in the third
degree. The petitioner argues that Ovian's performance
was ineffective because he failed to address the peti-
tioner's expressed misunderstanding of the law regard-
ing his sentencing exposure for robbery in the third
degree at trial, which meant that the petitioner lacked
the appropriate context for deciding whether to accept
a plea or to go to trial. The petitioner argues, and the
habeas court found, that the petitioner's choice to pro-
ceed to trial was a result of his mistaken belief that he
would be exposed only to a sentence of less than ten
years if convicted of robbery in the third degree. As a
result, the petitioner argues, his choice to proceed to
trial was ''irrational and essentially suicidal given the
circumstances.''

In response, the respondent, the Commissioner of
Correction, argues that Ovian's advice to accept the
plea offers was constitutionally sufficient because he
made clear to the petitioner the low probability of
acquittal for robbery in the first degree. The respondent
asserts that the petitioner's decision to proceed to trial

Moore *v.* Commissioner of Correction

was a last chance " 'Hail Mary' " to avoid a sentence for robbery in the first degree. Furthermore, the respondent contends that the petitioner failed to meet his burden of proving that Ovian did not advise him that a sentence for a conviction of robbery in the third degree would still exceed the plea offers presented to the petitioner.

Having considered the parties' arguments, we agree with the petitioner that trial counsel has a duty to correct a defendant's expressed, material misunderstanding of the law that influences his decision whether to accept a plea. Nevertheless, we conclude that the Appellate Court properly upheld the habeas court's denial of the petition for certification to appeal in light of the habeas court's articulation, which this court sua sponte ordered after hearing oral argument,[5] clarifying that the petitioner had failed to prove that Ovian did not advise him in this regard.

We begin by setting forth the applicable standard of review. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of [the pertinent legal standard to] the habeas court's factual findings . . . however, presents

---

[5] We directed the habeas court to issue an articulation on the following issue: "Whether . . . Ovian advised the petitioner about his sentencing exposure for a conviction at trial of the lesser included offense of robbery in the third degree." We ordered that articulation sua sponte pursuant to Practice Book §§ 60-5 and 61-10 (b). See *CCT Communications, Inc.* v. *Zone Telecom, Inc.*, 327 Conn. 114, 126, 172 A.3d 1228 (2017) (this court sua sponte ordered articulation pursuant to Practice Book § 60-5 with respect to factual basis for alternative ground for affirmance).

We note that, while this appeal was pending before the Appellate Court, the petitioner filed a motion for articulation, asking, inter alia, "whether [Ovian] advised the petitioner about his potential and likely exposure after a trial [at which] he prevailed on his robbery in the third degree theory . . . ." The habeas court denied the petitioner's motion for articulation on May 10, 2017. The petitioner filed a motion for review of the denial, to which the respondent objected. On July 12, 2017, the Appellate Court granted the motion for review but denied the relief requested.

Moore *v.* Commissioner of Correction

a mixed question of law and fact, which is subject to plenary review.'' (Internal quotation marks omitted.) *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 351, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron*, 569 U.S. 913, 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013).

''Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court could resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further. . . . The required determination may be made on the basis of the record before the habeas court and the applicable legal principles. . . . If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous.'' (Citation omitted; internal quotation marks omitted.) *Meletrich* v. *Commissioner of Correction*, 332 Conn. 615, 626, 212 A.3d 678 (2019).

Given the centrality of plea bargaining to the efficient administration of the criminal justice system, ''defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the [s]ixth [a]mendment [to the United States constitution] requires in the criminal process at critical stages. Because ours 'is for the most part a system of pleas, not a system of trials'

Moore *v.* Commissioner of Correction

. . . it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process.'' (Citation omitted.) *Missouri* v. *Frye*, 566 U.S. 134, 143–44, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012), quoting *Lafler* v. *Cooper*, 566 U.S. 156, 170, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012). "In today's criminal justice system, therefore, the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant.'' *Missouri* v. *Frye*, supra, 144. In order to prevail on a claim of ineffective assistance of counsel during plea negotiations under the well established standard of *Strickland* v. *Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which governs such claims, the defendant must establish that (1) counsel's performance was deficient, and (2) there was a reasonable probability that—but for the deficient performance— the petitioner would have accepted the plea offer, and that the trial court would have assented to the plea offer. See *Ebron* v. *Commissioner of Correction*, supra, 307 Conn. 357. For purposes of this appeal, we focus on the first prong of *Strickland*, specifically, whether counsel's failure to correct a client's expressed, material misunderstanding of his sentencing exposure for a lesser included charge constitutes deficient performance. As we noted previously, the petitioner's exposure with respect to the lesser included offense of robbery in the third degree is a significant consideration in this case because, as the habeas court found, he "believed that he should be convicted of robbery in the third degree because he only gave the bank teller a note and did not hurt anyone. The petitioner rejected both plea offers for ten and fifteen years to serve for robbery in the first degree because he [believed that he] . . . committed [only] a robbery in the third degree and he believed that five years was a more reasonable sentence for his offense.''

Moore *v.* Commissioner of Correction

The United States Supreme Court has declined to limit findings of deficient performance solely to affirmative misadvice by counsel because there is no meaningful distinction between acts of commission and acts of omission when assessing ineffective assistance of counsel claims. See *Padilla* v. *Kentucky*, 559 U.S. 356, 370, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). There is no per se rule requiring specific conduct of defense attorneys during plea negotiations.[6] *Purdy* v. *United States*, 208 F.3d 41, 46 (2d Cir. 2000). Instead, we must determine whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland* v. *Washington*, supra, 466 U.S. 690; accord *Padilla* v. *Kentucky*, supra, 370. The parameters of appropriate advice required during plea negotiations are determined by a fact specific inquiry in which we consider whether an attorney's performance fell below "an objective stan-

_____

[6] We note that the respondent asks us to overrule two Appellate Court decisions, namely, *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017), and *Barlow* v. *Commissioner of Correction*, 150 Conn. App. 781, 93 A.3d 165 (2014), on which that court relied in the present case. See *Moore* v. *Commissioner of Correction*, supra, 186 Conn. App. 264. The respondent argues that both *Sanders* and *Barlow* always require counsel to recommend the "best course of action"; *Barlow* v. *Commissioner of Correction*, supra, 800; accord *Sanders* v. *Commissioner of Correction*, supra, 830–32; when advising a client about whether to accept a plea offer, which, the respondent contends, is inconsistent with the Second Circuit's rejection of a per se rule in *Purdy* v. *United States*, 208 F.3d 41, 46 (2d Cir. 2000). We disagree with the respondent's reading of *Sanders* and *Barlow*. Those cases do require counsel to provide advice on plea offers, but they do not mandate that counsel make specific recommendations in all circumstances. See *Sanders* v. *Commissioner of Correction*, supra, 832 (no per se obligation that counsel provide recommendation regarding plea offers); *Barlow* v. *Commissioner of Correction*, supra, 794–95 (same). Finally, we note that the present case does not implicate a failure on Ovian's part to provide a recommendation regarding whether the petitioner should have accepted a plea offer, as Ovian provided such guidance. Instead, this case concerns Ovian's alleged failure to address the petitioner's expression of a material misunderstanding as to his sentencing exposure, which ultimately influenced the petitioner's decision to reject the plea offers.

dard of reasonableness.'' *Strickland* v. *Washington*, supra, 688; accord *Padilla* v. *Kentucky*, supra, 366; *Davis* v. *Commissioner of Correction*, 319 Conn. 548, 555, 126 A.3d 538 (2015), cert. denied sub nom. *Semple* v. *Davis*, U.S. , 136 S. Ct. 1676, 194 L. Ed. 2d 801 (2016).

The objective standard of reasonableness for an attorney's performance is defined by prevailing professional norms and standards, such as those contained in the American Bar Association's Standards for Criminal Justice and Model Rules of Professional Conduct. See, e.g., *Padilla* v. *Kentucky*, supra, 559 U.S. 366–67; *Strickland* v. *Washington*, supra, 466 U.S. 688; G. Chin & R. Holmes, ''Effective Assistance of Counsel and the Consequences of Guilty Pleas,'' 87 Cornell L. Rev. 697, 713 (2002). When advising a defendant during plea negotiations, counsel should ''advise the defendant of the alternatives available and address considerations deemed important by defense counsel *or the defendant* in reaching a decision.'' (Emphasis added.) A.B.A., Standards for Criminal Justice: Pleas of Guilty (3d Ed. 1999) standard 14-3.2 (b), p. 116 (A.B.A. Standards for Criminal Justice). ''[D]efense counsel is charged with the primary responsibility [of] ensur[ing] that the defendant fully understands the plea that is being offered, including all terms of the sentence that could be imposed and other ramifications of that plea.'' Id., standard 14-3.2, commentary, p. 120. Given the fact specific nature of plea negotiations and client communications, the necessary information depends on the individual circumstances of each defendant and his or her case. Id.; see also 1 Restatement (Third), The Law Governing Lawyers § 20 (3), p. 169 (2000) (''[a] lawyer . . . must explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation'').

Moore *v.* Commissioner of Correction

"Counsel rendering advice in this critical area may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea . . . whether the defendant has maintained his innocence, and the defendant's *comprehension of the various factors that will inform his plea decision.*" (Emphasis added.) *Purdy* v. *United States*, supra, 208 F.3d 45. Instead of failing to meet a prescribed, mechanical standard, counsel's performance has been held constitutionally deficient when counsel failed to provide his client with "sufficient information about the client's sentencing exposure to allow the client 'to make a reasonably informed decision [regarding] whether to accept a plea offer.' "[7] *United States* v. *Penoncello*, 358 F. Supp. 3d 815, 822 (D. Minn. 2019), quoting *United States* v. *Day*, 969 F.2d 39, 43 (3d Cir. 1992). An understanding of the difference between sentencing exposures resulting from standing trial and accepting a plea offer "will often be crucial to the decision [regarding] whether to plead guilty." *United States* v. *Day*, supra, 43; see id., 44 (holding that performance would be deficient if counsel failed to advise defendant about sentence exposure). "A defendant cannot make an intelligent choice about whether to accept a plea offer unless he fully understands the risks of proceeding to trial." *United States* v. *Herrera*, 412 F.3d 577, 580 (5th Cir.

_____

[7] As the petitioner noted in his brief, much of the United States Supreme Court and Connecticut precedent that considers claims of inadequate representation during the plea negotiation stage focuses on instances in which a criminal defendant *accepts* a plea as a result of ineffective assistance. This case is distinct in that it concerns a criminal defendant who *rejected* plea offers on the basis of *his own misunderstanding* of the law that went uncorrected. However, the rationale behind those cases, specifically, that a defendant must make an informed decision, remains relevant in light of the United States Supreme Court's emphasis on the importance of a defendant's ability to receive competent legal assistance during the plea negotiations stage. See *Missouri* v. *Frye*, supra, 566 U.S. 144; *Ebron* v. *Commissioner of Correction*, supra, 307 Conn. 357–59.

Moore *v.* Commissioner of Correction

2005); see also *Smith* v. *United States*, 348 F.3d 545, 553 (6th Cir. 2003) (''[a] criminal defendant has a right to expect at least that his attorney will . . . explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available''). On this point, the United States Court of Appeals for the Third Circuit has held that a defense attorney's failure to accurately advise his client about the range of sentences he faced if found guilty constituted ineffective assistance of counsel inasmuch as ''his judgment was clouded by misunderstanding up through the time of his trial because his counsel did not do his job.'' *United States* v. *Bennett*, 588 Fed. Appx. 159, 161 (3d Cir. 2014); see also *United States* v. *Penoncello*, supra, 822–23 (concluding that defense counsel's failure to inform defendant that rejecting initial plea offer would result in fifty year increase in sentencing exposure amounted to deficient performance).

The respondent argues, and the Appellate Court agreed, that requiring counsel to advise their criminal defense clients as to each and every possible sentencing scenario would broaden the duty of trial counsel beyond the scope of the objective standard of reasonableness. *Moore* v. *Commissioner of Correction*, supra, 186 Conn. App. 265. We do not, however, understand the petitioner to seek to impose such a broad duty on defense attorneys in contending that Ovian failed to provide him with constitutionally adequate advice. Instead, the petitioner argues that, ''[w]hen a criminal defendant's strong, subjective, and unrealistic beliefs about his case . . . stem from *an articulated legal or factual misunderstanding*, the role of constitutionally competent counsel is to give accurate and complete advice about the law or relevant facts.'' (Citation omitted; emphasis added; internal quotation marks omitted.) We agree with this more limited understanding of the defense attorney's obligation. Indeed, this obligation is consistent with those already

Moore *v.* Commissioner of Correction

imposed on counsel when advising on deportation or other collateral consequences that are likely determinative of a criminal defendant's decision whether to accept a plea offer, beyond just maximum exposure after conviction.[8] See *Lee* v. *United States*, U.S. , 137 S. Ct. 1958, 1967, 198 L. Ed. 2d 476 (2017) (recognizing that defense counsel's error in advising on deportation consequences prejudiced defendant because deportation was " 'the determinative issue' " in his decision whether to accept plea); *Padilla* v. *Kentucky*, supra, 559 U.S. 368–69 (holding performance to be deficient when counsel failed to advise client about deportation consequences of plea agreement). Given the gravity of a defendant's decision whether to accept a plea offer or proceed to trial, we conclude that trial counsel has an obligation to address a material misunderstanding of law, expressed by the client, that appears to influence the client's decision whether to accept a plea offer or to proceed to trial. This obligation is wholly consistent with counsel's obligation to ensure defendants have the specific information necessary *for them* to make an informed decision. See *Purdy* v. *United States*, supra, 208 F.3d 44–45 (clarifying that counsel's obligation to advise on probable costs and benefits of decision

_____

[8] Like the court in *Purdy* v. *United States*, supra, 208 F.3d 44–45, the A.B.A. Standards for Criminal Justice specifically contemplate that the provision of legal advice during plea bargaining is not a one-size-fits-all process. For example, the commentary to standard 14-3.2 (f) recognizes that determining the collateral consequences of a conviction may be vast and difficult to predict in some cases; accordingly, the attorney should interview the client to determine which consequences are important to the client. A.B.A. Standards for Criminal Justice, supra, standard 14-3.2, commentary, pp. 126–27. In accordance with defense counsel's duty to explain the import and effect of all plea offers to the defendant, the A.B.A. Standards for Criminal Justice also reference the Model Rules of Professional Conduct. See id., p. 119. Model rule 1.4 (b) dictates that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." A.B.A., Model Rules of Professional Conduct (2017) rule 1.4 (b), p. 19.

Moore *v.* Commissioner of Correction

requires fact specific inquiry into circumstances surrounding plea negotiation).

In response to this court's articulation order; see footnote 5 of this opinion; the habeas court clarified that the petitioner failed to ''meet his burden to establish facts that would support his claim that . . . Ovian did not advise him as to his maximum exposure with enhancements on a conviction for robbery in the third degree.'' Specifically, during the habeas proceedings, neither the petitioner nor Ovian could recall whether Ovian specifically advised him as to his exposure under a sentence for robbery in the third degree. Ovian testified that, ''although not completely certain, [he] was reasonably certain that he would have explained to the petitioner that *the enhanced penalties would apply to any conviction, including robbery in the third degree.* He therefore believed that he would have told the petitioner that, even if he was convicted of robbery in the third degree, he would face more than ten years.'' (Emphasis added.) In its articulation, the habeas court expressly credited Ovian's testimony and found that he likely did advise the petitioner as to his exposure for a sentence of robbery in the third degree. Therefore, because the habeas court found, as a factual matter, that the petitioner did not meet his burden of proving that Ovian breached his duty to advise him regarding his sentencing exposure for robbery in the third degree, we conclude that the petitioner has failed to establish that Ovian rendered ineffective assistance of counsel. Accordingly, the Appellate Court properly dismissed the petitioner's appeal from the denial of the petition for a writ of habeas corpus.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.