**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-3330
_____

UNITED STATES OF AMERICA

v.

OMAR BENNETT,
             Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-02-cr-00172-024)
District Judge:  Honorable Stewart Dalzell

Argued June 24, 2014

BEFORE:  FUENTES, GREENAWAY, JR., and NYGAARD, *Circuit Judges*

(Opinion Filed: October 22, 2014)

Jonathan H. Feinberg, Esq. [Argued]
Kairys, Rudovsky, Messing & Feinberg
718 Arch Street
Suite 501 South
Philadelphia, PA 19106
          *Counsel for Appellant*

Bernadette A. McKeon, Esq. [Argued]
Kathy A. Stark, Esq.
Robert A. Zauzmer, Esq.
Office of United States Attorney
615 Chestnut Street

Suite 1250
Philadelphia, PA 19106

*Counsel for Appellee*

_____

OPINION*

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

NYGAARD, *Circuit Judge.*

Omar Bennett appeals the District Court's order denying his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[1] Bennett argues that his trial counsel was ineffective for failing to properly inform him about the range of sentences he faced if he were judged guilty. He says that his attorney's failure to give him accurate information interfered with his ability to make reasonable choices about his case, causing him to pass up an opportunity to make an open plea and avoid trial, that—he argues— might have lowered his Guidelines range and possibly lowered his sentence. We agree.

This opinion does not have any precedential value. Therefore, our discussion of the case is limited to covering only what is necessary to explain our decision to the parties.[2]

---

[1] We have jurisdiction over this appeal pursuant to 28 U.S.C. §1291 and § 2253(a). *United States v. Lloyd*, 188 F.3d 186 (3d Cir. 1999).

[2] We review legal issues de novo and factual findings for clear error. *Lambert v. Blackwell*, 134 F.3d 506, 512 (3d Cir. 1997).

2

Bennett and his appointed counsel, Joshua Briskin, did not get along and did not talk with each other very much before his trial on a 2002 indictment for drug conspiracy. Briskin described Bennett as determined to go to trial, and he said this was the reason that he never discussed a plea deal with him, nor—it appears—ever talked with him about how much time he would potentially serve if convicted.

Bennett was already serving time in prison for a state drug conviction. He says that, from his own research in the prison library, he was convinced that he was facing a 20-year mandatory minimum sentence because his criminal record would cause the government to ask for the recidivist enhancement. He was wrong. He was still appealing his last conviction and so it did not count towards the recidivist enhancement. But, unfortunately, everyone else involved in the case made the same mistake: the Government filed an information seeking the recidivist enhancement under 21 U.S.C. § 851 on the first day of jury selection; Briskin, after receiving the information, told Bennett that he was facing a twenty-year minimum sentence; and, the District Court applied the recidivist enhancement.[3] Everyone now concedes these errors and, after appeals, the District Court adjusted Bennett's sentence.

The day of jury selection, Briskin—at Bennett's request—talked to the Government about making a deal in which he would plead guilty in exchange for a ten-year sentence. The Government wrote a letter to Bennett rejecting the deal, but it

---

[3] Briskin made an additional mistake, advising Bennett that his federal sentence would be served consecutive to his state sentence.

suggested that Bennett could make an open guilty plea. [4] With this plea, he probably would have received a two-point reduction in his offense for acceptance of responsibility, and he could have challenged the quantity of drugs linked to him to possibly lower his sentence even more. There is uncertainty on whether Bennett knew about the Government's "offer" of an open plea before he went to trial, but there is no doubt that Bennett went to trial knowing that the Government rejected his plea offer and believing that—if found guilty—he faced no less than twenty-years in prison.

There is no dispute that Briskin failed Bennett twice: first by not giving him vital information about potential sentences; and second, by not investigating Bennett's record well enough to give him accurate advice. Nonetheless, the District Court decided that Briskin was not ineffective because, it said, any effort to discuss a plea bargain with Bennett would have been pointless. Though Bennett said he would have taken a plea deal if he had known the facts, the District Court did not believe him. It pointed to a conversation between Bennett and his uncle well before trial where he told his uncle that he wanted to make the Government prove their case. The District Court also dismissed the last-minute, ten-year plea deal that he proposed as insincere. It was convinced that Bennett was single-minded about going to trial, making any discussion of pleas a waste of time. We have a problem with the District Court's determination that Bennett was not

---

[4]The prosecutor who wrote the letter was not the same person who filed the section 851 information. He was unaware of the information when he wrote the letter.

credible.  We are also convinced that this error led the District Court to reach the wrong conclusion about Briskin's effectiveness as counsel. [5]

The truth is that we will never know for sure if Bennett would have pleaded guilty if he knew all of the facts.  But, we do know that his judgment was clouded by misunderstanding up through the time of his trial because his counsel did not do his job.  Therefore, even if Bennett meant it when he told his uncle that he was going to make the government prove its case, there is no doubt that he said this while wrongly believing that—no matter what—he faced a minimum of twenty years imprisonment, served consecutive to the term he was already serving, if the District Court judged him guilty.  Under these circumstances, it is simply impossible to conclude that Bennett was reasonably capable of making up his mind about a plea, whether for or against.  He did not have the facts he needed to make a sound choice.  Because of this, the District Court made a clear error when it decided as fact that—in spite of what he said—Bennett was determined to go to trial.  To the contrary, in the context of this unusual case, Bennett's attempt to make a plea deal at the start of trial is enough to show that he was willing to plead.   Therefore, he deserves the benefit of the doubt about the degree to which his counsel's mistakes interfered with his judgment and impacted his sentence.

For all of these reasons, we will reverse the judgment of the District Court and remand the cause with instruction for the District Court to grant the motion under section

---

[5] To prove ineffectiveness of counsel, Bennett must show that "there is a reasonable probability that the plea offer would have been presented to the court . . . the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence" imposed. *Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012).

28 U.S.C. § 2255, vacate the sentence, and resentence Bennett as if he had entered an open guilty plea on the day that jury selection began.