******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MARK SILVER *v.* COMMISSIONER OF CORRECTION
## (AC 39238)

Keller, Bright and Pellegrino, Js.

*Syllabus*

The petitioner, who had been convicted of the crimes of attempt to commit murder and assault in the first degree, sought a writ of habeas corpus, claiming that his trial counsel had provided ineffective assistance. The habeas court rendered judgment denying the habeas petition and, thereafter, denied the petition for certification to appeal, and the petitioner appealed to this court. *Held* that the habeas court did not abuse its discretion in denying the petition for certification to appeal, the petitioner having failed to establish that the issues he raised were debatable among jurists of reason, that a court could have resolved the issues in a different manner or that the questions raised were adequate to deserve encouragement to proceed further; although the petitioner alleged that his trial counsel had failed to adequately advise him regarding a possible plea agreement with the state, the habeas court credited the testimony of his trial counsel that there never was a formal plea offer from the state and that the state had agreed only to bring a proposal to the victim's family for consideration if the petitioner approached the state with a proposal that included a sentence of twenty years incarceration, and even if the state had made a formal offer of twenty years incarceration, the petitioner failed to sustain his burden of demonstrating that his counsel's performance was deficient, as the testimony of his counsel, which the court credited, demonstrated that counsel adequately apprised the petitioner of the advisability of a plea deal with the state, correctly informed the petitioner of his exposure on the charges he was facing and of his exposure if the victim died, fully discussed with him the evidence that would be presented at trial and the strengths and weaknesses of the state's case, and urged the petitioner to authorize a request for a plea deal proposing a sentence of twenty years, but that the petitioner repeatedly refused to consider such a sentence and insisted on going to trial.

Argued January 2—officially released March 27, 2018

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Fuger, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Andrew P. O'Shea*, for the appellant (petitioner).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Emily Dewey Trudeau*, deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

BRIGHT, J. The petitioner, Mark Silver, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus, in which he alleged ineffective assistance on the part of his trial counsel in advising him concerning a possible plea deal. The dispositive issue is whether the habeas court abused its discretion in denying the petition for certification to appeal. We conclude that the habeas court properly denied certification, and we, therefore, dismiss the appeal.

The following facts inform our review. "In a two count substitute information filed August 8, 2008, the state charged the [petitioner] . . . with attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), and assault in the first degree in violation of General Statutes § [53a-59 (a) (1)]. After a jury trial, the [petitioner] was found guilty on both counts and sentenced by the court to a total effective term of forty years incarceration." (Footnote omitted.) *State* v. *Silver*, 126 Conn. App. 522, 525, 12 A.3d 1014, cert. denied, 300 Conn. 931, 17 A.3d 68 (2011). The judgment of conviction was affirmed by this court on direct appeal. Id., 539.

On December 21, 2015, the petitioner filed an amended petition for a writ of habeas corpus, alleging ineffective assistance of trial counsel, namely, Attorneys Barry Butler and William Schipul.[1] The petitioner alleged, in relevant part, that his trial counsel had "failed to adequately advise [him] regarding pursuing a plea agreement with the state . . . and . . . they failed to adequately pursue a plea bargain for [him]."[2] Following an April 26, 2016 trial on the merits of the petition, the habeas court denied the petition after concluding that the petitioner had failed to satisfy his burden of proof that counsel had provided ineffective assistance.

Specifically, the habeas court credited the testimony of Attorneys Butler and Schipul, and found that their testimony was more credible than that of the petitioner. The court also found that there never was a formal plea offer from the state, but that the state only had agreed to bring a proposal to the victim's family for consideration if the petitioner approached the state with a proposal of a sentence of twenty years incarceration; the petitioner, however, refused to consider such a sentence. The court further found that even if it were to assume that the state had made a formal offer of twenty years incarceration, it was clear that Butler and Schipul had complied with their constitutional duties to advise and explain the offer to the petitioner and that the petitioner had made the decision not to entertain such an offer. The court, therefore, denied the petition for a writ of habeas corpus. Thereafter, the petitioner filed

a petition for certification to appeal from the habeas court's judgment. The court denied the petition for certification to appeal on May 10, 2016. The petitioner now appeals from the judgment denying his petition for certification to appeal. Additional facts will be set forth as necessary.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, [the petitioner] must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . . To prove that the denial of his petition for certification to appeal constituted an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Citations omitted; internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 821–22, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017).

The petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal because there is merit to his underlying claim that trial counsel provided ineffective assistance by failing to provide constitutionally adequate advice during plea negotiations. We are not persuaded.

We set forth the legal principles and the standard of review that guide our analysis. "The sixth amendment to the United States constitution, made applicable to the states through the due process clause of the fourteenth amendment, affords criminal defendants the right to effective assistance of counsel. . . . Although a challenge to the facts found by the habeas court is reviewed under the clearly erroneous standard, whether those

facts constituted a violation of the petitioner's rights under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . .

"It is well established that the failure to adequately advise a client regarding a plea offer from the state can form the basis for a sixth amendment claim of ineffective assistance of counsel." (Citations omitted; internal quotation marks omitted.) *Duncan* v. *Commissioner of Correction*, 171 Conn. App. 635, 646–47, 157 A.3d 1169, cert. denied, 325 Conn. 923, 159 A.3d 1172 (2017). "As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] . . . [i]t is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Thomas* v. *Commissioner of Correction*, 141 Conn. App. 465, 471, 62 A.3d 534, cert. denied, 308 Conn. 939, 66 A.3d 881 (2013).

"To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. *Missouri* v. *Frye*, 566 U.S. 134, 147, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012); see also *Padilla* v. *Kentucky*, 559 U.S. 356, 364, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) . . . ." (Internal quotation marks omitted.) *Kellman* v. *Commissioner of Correction*, 178 Conn. App. 63, 71, 174 A.3d 206 (2017). The court, however, "can find against a petitioner . . . on either the performance prong or the prejudice prong, whichever is easier." *Thomas* v. *Commissioner of Correction*, supra, 141 Conn. App. 471. In the present case, the habeas court determined that the petitioner had failed to establish that counsel's performance was deficient; the court also determined that there had been no plea offer from the state.

The petitioner claims that the habeas court erred in determining that he had failed to establish that trial counsel had provided inadequate advice during plea negotiations. Specifically, the petitioner argues: "Attorney Schipul and Attorney [Butler] failed to adequately advise the petitioner such that he could make an informed choice regarding the state's offer of twenty years. Had they accurately informed the petitioner regarding the vast punishment he was exposed to by going to trial and the likelihood of a lengthy sentence being imposed, the petitioner would have accepted the state's offer and he would have received a sentence substantially less than the forty year sentence imposed after trial." Although the petitioner concedes that counsel's credited testimony "reflects that they informed the petitioner of the state's offer and recommended multiple times that he accept it," he argues that counsel, nevertheless, "did not adequately advise the petitioner regarding *why* the offer should be accepted." (Emphasis in original.)

The petitioner also specifically argues that "Butler failed to even review the state's evidence in conjunction with the elements of the charged crimes to explain why the state's case was strong[3] . . . ." (Footnote added.) He also contends that "both attorneys gave the petitioner affirmatively incorrect advice regarding his total exposure if he proceeded to trial. Attorney Schipul accurately informed the petitioner that he was exposed to five to forty years of incarceration under the . . . charges of attempted murder and assault in the first degree. However, he failed to adequately advise the petitioner that, if the victim died and he was charged with murder instead of attempted murder, that would increase his exposure to twenty-five to eighty years. Similarly, Attorney Butler's advice that the petitioner was exposed to twenty-five to sixty years if the victim passed away from his injuries was also affirmatively incorrect, as he apparently failed to account for the additional twenty years stemming from the assault in the first degree charge."[4]

The petitioner contends that counsel's overall advice was incorrect and incomplete, and that it fell short of objective standards for counseling regarding plea offers.[5] We are not persuaded. Indeed, even if we assume, as did the habeas court, that the state made a plea offer when it indicated to the petitioner that it would bring a plea proposal to the victim's family for consideration only if the petitioner approached the state and agreed to serve a twenty year term of incarceration, we, nevertheless, agree with the habeas court's conclusion that the petitioner has failed to establish that counsel's performance was deficient.

"Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and

then to offer his informed opinion as to what plea should be entered. Determining whether an accused is guilty or innocent of the charges in a complex legal indictment is seldom a simple and easy task for a layman, even though acutely intelligent. . . . A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable. . . .

"On the one hand, defense counsel must give the client the benefit of counsel's professional advice on this crucial decision of whether to plead guilty. . . . As part of this advice, counsel must communicate to the defendant the terms of the plea offer . . . and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed. . . . On the other hand, the ultimate decision whether to plead guilty must be made by the defendant. . . . And a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer. . . . Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because [r]epresentation is an art . . . and [t]here are countless ways to provide effective assistance in any given case . . . . Counsel rendering advice in this critical area may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea (whether or not accompanied by an agreement with the government), whether defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Vazquez* v. *Commissioner of Correction*, 123 Conn. App. 424, 437–38, 1 A.3d 1242 (2010), cert. denied, 302 Conn. 901, 23 A.3d 1241 (2011); see also *Sanders* v. *Commissioner of Correction*, supra, 169 Conn. App. 830–31.

In the present case, after listening to and viewing the evidence presented at the habeas trial, the habeas court credited the testimony of both Butler and Schipul, and it found that they had provided constitutionally adequate advice regarding the state's indication that it would bring to the victim's family and consider a twenty year term of incarceration if the petitioner made such a proposal.

The record reveals that Butler testified in relevant part that he thought the case against the petitioner was fairly strong and that the petitioner likely would not prevail. He testified that the state initially was reluctant to engage in plea negotiations because the victim's injuries were so severe and life threatening that it thought a murder charge might be brought against the petitioner. Butler stated that he persisted in trying to resolve the

case, and that he succeeded in getting the state to agree to consider a resolution, but that the state was firm in its position that it would talk to the victim's family only if the petitioner would approach the state about a deal that included at least a twenty year term of incarceration. Butler stated that he repeatedly broached this with the petitioner, but that the petitioner "was not interested in any twenty year sentence" or even in a fifteen year sentence. Butler testified that "[o]ne of the things that [the petitioner] said to me was the most he had ever done was eighteen months, and he sure as hell wasn't going to be taking any twenty years." Butler testified that he advised the petitioner that "the state had a strong case, that we were exposed to fifty to sixty years with the victim's injuries if he did die and we faced [a] murder [charge]" and that the petitioner should "settle the case." Butler always recommended that the petitioner "tak[e] the twenty as opposed to a trial."

Schipul testified that he reviewed Butler's notes, the state's evidence, the disclosures, and the investigators' reports after he took over the petitioner's defense. After such review, Schipul thought the case against the petitioner was strong. He learned from Butler's notes that the state might be willing to present a twenty year deal to the victim's family if the petitioner first agreed to it, but that no formal offer had been made or would be made by the state unless the petitioner brought an offer to the state that included a twenty year term of incarceration. Schipul also testified that the possibility of a deal was discussed in court chambers, and, after such discussion, Schipul believed that the state was "solid . . . like [a] wall" that would not budge about the petitioner serving at least twenty years. He also testified that the state was not willing to make an offer to the petitioner, and that he had to be the one to bring any offer to the state, but that he could do so only if the petitioner first were to agree to a twenty year term of incarceration; the state was not willing to bring any potential offer to the very involved family of the victim unless the petitioner were to approach the state with an offer that he would serve twenty years. Schipul "understood . . . that it wasn't ever going to get any better than twenty years."

When Schipul brought this possibility to the petitioner on several occasions, the petitioner was not interested and "thought twenty years was way too much." Schipul stated: "It got repetitive after a while, and I [knew] the [petitioner] wasn't happy about me bringing it up every time I saw him, so basically, it was—I'd bring it up occasionally after it was clear to me that [the petitioner] had no intention of taking twenty years."

Schipul also testified that he went over the evidence with the petitioner, including the vehicle, the description of the perpetrator, and the petitioner's confession.

He also stated that the petitioner had copies of the discovery and the police reports. Schipul discussed the strengths and weaknesses of the case, and he told the petitioner that the case was not worth taking to trial, and that the petitioner should enter into a plea agreement. He testified that he explained to the petitioner "the advantages of taking a plea bargain versus going to trial and being exposed to forty years incarceration, and a possible murder prosecution in the future." Schipul stated that the petitioner told him that a twenty year sentence was not an option, even if the state would agree not to prosecute him for murder in the event the victim died. Schipul repeatedly told the petitioner, even during the trial, that he believed the petitioner should accept the twenty year proposal, but the petitioner wanted to continue with the trial. The petitioner argues that Schipul's strong recommendations were insufficient in light of the fact that he gave the petitioner false hope of an acquittal by telling the petitioner that he might have a defense based on the fact that no witness had identified the petitioner as the driver of the vehicle that ran over the victim. Schipul's discussion with the petitioner of this theory of defense, however, hardly can be seen as encouragement to the petitioner that he try the case given the repeated advice to the petitioner that the state had a strong case, he should accept a plea bargain, and he should not go to trial.

We conclude that the testimony of counsel, which the habeas court credited, demonstrates that counsel adequately apprised the petitioner of the advisability of a plea deal with the state. Schipul correctly informed the petitioner of his exposure on the charges he was facing. Butler correctly informed him of his exposure if the victim died. Schipul fully discussed with the petitioner the evidence that would be presented at trial and the strengths and weaknesses of the case. He also reviewed with the petitioner the applicable statutes. Both Butler and Schipul told the petitioner that the state had a very strong case and urged him to authorize them to inform the state that the petitioner would accept a sentence of twenty years. Despite all of counsel's efforts and advice, the petitioner simply was not interested in a deal that required a long prison sentence; he was informed and chose to go to trial.

Accordingly, after a thorough review of the record, we conclude that the habeas court properly concluded that the petitioner failed to sustain his burden of demonstrating that his trial counsel rendered ineffective assistance. The petitioner failed to establish that the issues he raised are debatable among jurists of reason, that a court could resolve them in a different manner or that the questions he raised are adequate to deserve encouragement to proceed further. See *Sanders* v. *Commissioner of Correction*, supra, 169 Conn. App. 821. We conclude, therefore, that the habeas court did not abuse its discretion in denying the petition for certification

to appeal from the judgment denying his amended petition for a writ of habeas corpus.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] Butler represented the defendant for only a few months before accepting a position in a different judicial district. Schipul was appointed to replace Butler as the defendant's attorney thereafter. The petitioner does not make separate claims of ineffective assistance against each attorney, but, rather, alleges that counsel's collective overall representation was ineffective.

[2] The petitioner had alleged a second count in his petition, which he withdrew with prejudice before the habeas hearing.

[3] The respondent, the Commissioner of Correction, contends that this claim was not specifically raised in the habeas petition, that Butler was not asked about this during the habeas trial, and that the habeas court, therefore, did not address it. We agree with the respondent. We also note that the petitioner failed to address this in his pretrial habeas brief. Furthermore, the petitioner does not argue in his brief that Schipul failed to address the elements of the crime, and we conclude that such an argument would be inconsistent with Schipul's testimony that he discussed with the petitioner the evidence and the strength and weaknesses of the state's case. The petitioner also specifically testified during the habeas trial that he had looked at the statutes addressing the crimes he was alleged to have committed and that Schipul had to explain them to him, particularly "that attempted murder was a compound statute that is combined with murder and attempt together." Accordingly, this belies any claim that counsel had not addressed the elements of the crime with the petitioner.

[4] The petitioner incorrectly alleged that, if the victim had died, his total exposure would have been eighty years. He is correct that his maximum exposure for intentional murder, pursuant to § 53a-54a, would have been sixty years, but he fails to recognize that he could not have been exposed to a separate sentence of twenty years for intentional assault in the first degree, pursuant to § 53a-59 (a) (1), involving the same victim and the same conduct.

[5] The petitioner also argues that counsel never counseled him on all the additional charges that the state *might have* been able to bring against him via an amended information. When asked during oral argument before this court for any case law that would support his contention that counsel has a responsibility to advise a client regarding every possible charge that *could be brought* via a hypothetical amendment to an information, when the state never indicated that it was considering additional charges, the petitioner admitted that he was aware of none. We are not inclined to impose a new onerous requirement on counsel on the basis of an unsupported argument for which the petitioner provides no analysis or legal basis to do so, particularly when the petitioner submitted no evidence whatsoever that the state ever communicated an intent to charge the petitioner with the additional hypothetical crimes.