******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

JOSEPH MOORE *v.* COMMISSIONER OF
CORRECTION
(AC 40112)

Lavine, Keller and Elgo, Js.

*Syllabus*

The petitioner, who previously had been convicted of robbery in the first
degree and commission of a class B felony with a firearm, sought a writ
of habeas corpus, claiming, inter alia, ineffective assistance of trial
counsel. Specifically, the petitioner claimed, inter alia, that his trial
counsel rendered ineffective assistance by failing to advise him of the
maximum sentence he faced if he was successful in proving a theory
of defense at trial that amounted to conceding that he was guilty only of
the lesser included offense of robbery in the third degree. The petitioner
claimed that trial counsel had a duty to encourage him to accept the
state's plea offers by advising him that the maximum sentence at trial
were he convicted only of robbery in the third degree would be at least
as severe or exceed the sentences of the plea offers initially made to
him. The habeas court rendered judgment denying the amended habeas
petition and, thereafter, denied the petition for certification to appeal,
and the petitioner appealed to this court. *Held* that the habeas court
did not abuse its discretion in denying the petition for certification to
appeal, the petitioner having failed to demonstrate that his trial counsel
provided ineffective assistance: trial counsel adequately advised the
petitioner on the best course of action given the facts of the underlying
case and informed him of the potential total sentence to which he
was exposed, as trial counsel had many discussions with the petitioner
throughout the course of his representation, advised the petitioner to
accept each of the plea deals offered to him, and properly explained
the state's evidence and provided adequate information for the petitioner
to make an informed decision as to whether to accept the state's plea
offers, and the failure of counsel to inform the petitioner of the potential
total sentence exposure he faced if he succeeded on the unlikely theory
of proving robbery in the third degree and counsel's decision not to
further persuade the petitioner to accept the plea offers did not consti-
tute deficient performance, the petitioner having cited no relevant case
to support his claim on appeal and having presented no evidence at the
habeas trial to demonstrate that the prevailing professional norms in
Connecticut made it necessary for trial counsel to advise the petitioner
in the manner he claimed was required; accordingly, the petitioner failed
to show that his claim was debatable among jurists of reason, that a
court could have resolved the claim in a different manner, or that the
question was adequate to deserve encouragement to proceed further.

Argued September 14—officially released November 27, 2018

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland and tried to the court, *Cobb, J.*; judgment deny-
ing the petition; thereafter, the court denied the petition
for certification to appeal, and the petitioner appealed
to this court. *Appeal dismissed.*

*Michael W. Brown*, for the appellant (petitioner).

*Mitchell S. Brody*, senior assistant state's attorney,
with whom, on the brief, were *Matthew C. Gedansky*,
state's attorney, and *Angela Macchiarulo*, senior assis-
tant state's attorney, for the appellee (respondent).

*Opinion*

KELLER, J. The petitioner, Joseph Moore, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal and (2) improperly rejected his claim that his trial counsel had rendered ineffective assistance. We conclude that the court did not abuse its discretion in denying the petition for certification to appeal, and, accordingly, dismiss the petitioner's appeal.

The following facts and procedural history are relevant to our resolution of the petitioner's claims. Following a trial, a jury found the petitioner guilty of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and commission of a class B felony with a firearm in violation of General Statutes § 53-202k. The petitioner then pleaded guilty, in response to a part B information, that the aforementioned offenses were committed while on release in violation of General Statutes § 53a-40b. The petitioner also pleaded guilty to a second part B information charging him with being a persistent felony offender in violation of General Statutes § 53a-40 (f). The trial court sentenced the petitioner to a total effective term of thirty-four years incarceration.

On direct appeal from the petitioner's underlying conviction, this court set forth the following facts that the jury reasonably could have found. "At approximately 1 p.m. on July 13, 2009, the [petitioner] entered the New Alliance Bank in Columbia wearing a white tank top and dark sweatpants. Branch manager Penny Ritchie and tellers Maria DePietro and Michelle LaLiberty, who were working at the bank that day, observed the [petitioner] approach the check writer station. The [petitioner] then asked another patron, David Woodward, where the withdrawal slips were located, at which point the [petitioner] took a slip from the station and began to write on it. Photographs from the bank's security cameras introduced into evidence depict the [petitioner] writing on a piece of paper at the check writer station and then approaching the teller station with the piece of paper in his hand.

"The [petitioner] approached Ritchie and handed her a deposit slip that read, '[g]ive cash. I have gun.' When Ritchie explained that she was not a teller, the [petitioner] ordered her to '[g]ive me the cash. Give it now.' Ritchie then slid the deposit slip to DePietro, who unlocked her teller drawer. As she did, the [petitioner] demanded, '[h]urry up, hurry up' and reached over the counter. DePietro then handed the [petitioner] $3500 in cash.

"The [petitioner] immediately exited the bank and

Woodward followed. As Ritchie locked the bank's doors and DiPietro called 911, LaLiberty closed the bank's drive-through window. As she did, she saw the [petitioner] walking at the rear of the bank to a grassy strip between the drive-through lane and an adjacent firehouse. LaLiberty wrote down a description of the [petitioner] at that time. Approximately six hours later, the Connecticut state police apprehended the [petitioner] in a grassy area near Route 66 in Columbia. The [petitioner] subsequently reviewed and executed a waiver of *Miranda*[1] rights form and agreed to speak with Detective Derek Kasperowski. The [petitioner] then admitted to robbing the bank and stated that he remembered 'smoking crack before going into the bank, going to the bank teller and telling her to give him money.' Although no firearm was found on the [petitioner's] person or the surrounding area, the $3500 in cash was recovered." (Internal quotation marks omitted.) *State* v. *Moore*, 141 Conn. App. 814, 816–17, 64 A.3d 787, cert. denied, 309 Conn. 908, 68 A.3d 663 (2013). This court affirmed the petitioner's conviction. Id., 825.

On May 16, 2014, the petitioner, as a self-represented party, filed an application for a writ of habeas corpus. After obtaining counsel, he filed an amended petition on April 28, 2016. He alleged in relevant part that his constitutional right to effective assistance of counsel was violated, arguing that his "trial counsel's performance was deficient because he failed to adequately counsel the petitioner about the advisability of accepting the plea offer" and that there was a "reasonable probability that—but for trial counsel's deficient performance—the petitioner would have accepted the plea offer and the court would have imposed a more favorable sentence than the petitioner received."

At the habeas trial on September 15, 2016, the habeas court heard testimony from Matthew Gedansky, the state's attorney in the petitioner's criminal case, Douglas Ovian, the petitioner's trial counsel, and the petitioner. In particular, the petitioner testified that he admitted from the beginning that he robbed the bank, but he believed that he was only guilty of robbery in the third degree because he only had handed the bank teller a note and never hurt anyone.[2] There was testimony that three plea offers were made to the petitioner: an offer for ten years to serve with five years of special parole; an offer for ten years to serve with two years of special parole; and an offer made at a judicial pretrial conference with *Sullivan, J.*, offering the petitioner fifteen years to serve if he pleaded guilty to one count of robbery in the first degree.[3] Ovian testified that his notes indicated that he advised the petitioner to accept the offers and that he would never have told the petitioner to take this case to trial. In addition, Gedansky testified that he recalled Ovian telling him that Ovian had advised the petitioner to take the offer of ten years to serve with two years special parole. The petitioner

testified that he rejected these offers because he had faith the state might present him with a more favorable offer, and that he believed he deserved only five years of imprisonment. There also was differing testimony between Ovian and the petitioner with respect to what Ovian advised as to the potential maximum sentence the petitioner faced if he was found guilty of all the charges, and whether he advised the petitioner of the potential maximum sentence he faced if he prevailed on a robbery in the third degree theory at trial.[4]

In a memorandum of decision filed January 10, 2017, the habeas court denied the amended petition for a writ of habeas corpus, finding that the petitioner had failed to prove deficient performance or prejudice. In particular, the habeas court found that "Ovian had many discussions with the petitioner throughout the course of his representation," and that Ovian "went over the state's evidence with [the petitioner] and he advised the petitioner to take each of the deals as they were offered given the circumstances." Additionally, the habeas court found that Ovian "informed the petitioner that he was facing a maximum exposure of forty-eight and one-half years if convicted of robbery in the first degree due to the sentence enhancements the petitioner faced." The habeas court concluded that Ovian relayed the offers to the petitioner, properly explained the state's evidence to him, and adequately warned him of the exposure he could face should he choose to go to trial. On January 17, 2017, the petitioner filed a petition for certification to appeal, which was later denied by the habeas court. This appeal followed.

We begin by setting forth the applicable standard of review and procedural hurdles that the petitioner must overcome in order to obtain appellate review of the merits of a habeas court's denial of the habeas petition following denial of certification to appeal. "In *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), [our Supreme Court] concluded that . . . [General Statutes] § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), [the Supreme Court] incorporated the factors adopted by the United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . A petitioner who establishes an abuse of discretion through one of the factors listed above must then dem-

onstrate that the judgment of the habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Internal quotation marks omitted.) *Hankerson* v. *Commissioner of Correction*, 150 Conn. App. 362, 366–67, 90 A.3d 368, cert. denied, 314 Conn. 919, 100 A.3d 852 (2014).

On appeal, the petitioner argues that the habeas court improperly rejected his claim that his trial counsel, Ovian, had rendered ineffective assistance.[5] In his view, although Ovian advised him of the maximum sentence that he faced on the charge of robbery in the first degree, Ovian's performance was deficient for failing to advise him of the maximum sentence he faced if he was successful in proving at trial that he was guilty only of committing the lesser included offense of robbery in the third degree.[6] For the reasons set forth in this opinion, we disagree with the petitioner and conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal.

"The sixth amendment to the United States constitution, made applicable to the states through the due process clause of the fourteenth amendment, affords criminal defendants the right to effective assistance of counsel. *Davis* v. *Commissioner of Correction*, 319 Conn. 548, 554, 126 A.3d 538 (2015), cert. denied sub nom. *Semple* v. *Davis*, U.S. , 136 S. Ct. 1676, 194 L. Ed. 2d 801 (2016); see also *Thiersaint* v. *Commissioner of Correction*, 316 Conn. 89, 100, 111 A.3d 829 (2015) (criminal defendant constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings). Although a challenge to the facts found by the habeas court is reviewed under the clearly erroneous standard, whether those facts constituted a violation of the petitioner's rights under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Duncan* v. *Commissioner of Correction*, 171 Conn. App. 635, 646, 157 A.3d 1169, cert. denied, 325 Conn 923, 159 A.3d 1172 (2017).

The United States Supreme Court has made clear that the failure to adequately advise a client throughout the plea process can form the basis for a sixth amendment claim of ineffective assistance of counsel, and that such claims should be evaluated under the two-part standard enunciated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See *Hill* v. *Lockhart*, 474 U.S. 52, 57, 106 S. Ct.

366, 88 L. Ed. 2d 203 (1985). "[I]t is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Silver* v. *Commissioner of Correction*, 180 Conn. App. 592, 597, 184 A.3d 329, cert. denied, 328 Conn. 940, 184 A.3d 759 (2018).

"Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered. Determining whether an accused is guilty or innocent of the charges in a complex legal indictment is seldom a simple and easy task for a layman, even though acutely intelligent." *Von Moltke* v. *Gillies*, 332 U.S. 708, 721, 68 S. Ct. 316, 92 L. Ed. 309 (1948). "A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable." (Internal quotation marks omitted.) *Vazquez* v. *Commissioner of Correction*, 123 Conn. App. 424, 437 (2010), 1 A.3d 1242, cert. denied, 302 Conn. 901, 23 A.3d 1241 (2011), quoting *Boria* v. *Keane*, 99 F.3d 492, 496 (2d Cir. 1996), cert. denied, 521 U.S. 1118, 117 S. Ct. 2508, 138 L. Ed. 2d 1012 (1997).

"Although the defendant ultimately must decide whether to accept a plea offer or proceed to trial, this critical decision, which in many instances will affect a defendant's liberty, should be made by a represented defendant with the adequate professional assistance, advice, and input of his or her counsel. Counsel should not make the decision for the defendant or in any way pressure the defendant to accept or reject the offer, but counsel should give the defendant his or her professional advice on the best course of action given the facts of the particular case and the potential total sentence exposure." (Emphasis omitted.) *Barlow* v. *Commissioner of Correction*, 150 Conn. App. 781, 800, 93 A.3d 165 (2014). "We are mindful that [c]ounsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness. . . . Accordingly, [t]he need for recommendation depends on countless factors, such as the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial compared to the guilty plea . . . whether [the] defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform [his] plea decision." (Citation omitted; internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 169 Conn.

App. 813, 828, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017).

The petitioner argues that his trial counsel's performance was deficient for failing to advise him of the maximum sentence he faced if he was successful in proving a theory of defense at trial that amounted to conceding that he was guilty only of the lesser included offense of robbery in the third degree.[7] Specifically, the petitioner argues that although Ovian advised him of the maximum exposure he faced if convicted of robbery in the first degree, Ovian's performance was deficient because he had a duty to further encourage the petitioner to accept the plea offers by advising him that the maximum sentence at trial were he convicted only of robbery in the third degree would be "at least as severe" or exceed the sentences of the plea offers initially made to him. In other words, the petitioner argues that his trial counsel was deficient because he was required, but failed, to adequately address the reasons that the petitioner had for proceeding to trial, rendering him unable to meaningfully weigh his options. We disagree.

In the present case, our review of the record demonstrates that Ovian provided the petitioner with professional advice on the best course of action given the facts of the petitioner's case and also informed him of the potential total sentence to which he was exposed. See *Barlow* v. *Commissioner of Correction*, supra, 150 Conn. App. 800. While the petitioner may prefer that we broaden this duty by requiring trial counsel to advise their clients on the total sentence exposure they face for each and every possible defense scenario, we decline to adopt such a rule.

As the petitioner points out, both parties agree that the evidence against the petitioner was overwhelming and that it was highly unlikely that the petitioner could have prevailed with respect to the charge of robbery in the first degree. To be sure, the evidence at trial included, inter alia, still photographs from the video surveillance of the petitioner entering the bank and writing a note, photographs of him approaching the teller station with the piece of paper in hand, the slip containing the petitioner's written demand for money and reference to a gun, testimony of the bank teller explaining that she had written a description of the petitioner on the back of the slip, and evidence that the petitioner was apprehended with the proceeds of the crime on him. In its memorandum of decision, the habeas court found that Ovian had many discussions with the petitioner throughout the course of his representation and discussed the strengths and weaknesses of the state's evidence with him. On the basis of his assessment of the case, Ovian advised the petitioner to accept each of the plea deals offered to him, informing the petitioner that he was facing a maximum sentence

of forty-eight and one-half years if he proceeded to trial.

Although the petitioner was apprised of the evidence against him and advised to accept each of the plea deals offered, the record demonstrates that he held strong, subjective, and unrealistic beliefs about his case. For example, the habeas court found that the petitioner believed he should be convicted only of robbery in the third degree because he merely gave the bank teller a note and did not hurt anyone; that he believed that five years was a more reasonable sentence for his offense; that the petitioner, at a judicial pretrial conference, stated, "[s]ir, I apologize, to offend you all but I just want you to know this is not a [r]obbery [first] and I will be going to trial to prove it because I am not copping out to this"; that he believed that the maximum sentence he could receive for robbery in the third degree was five years; and that he rejected plea offers from the state because he had faith the state might present him with a more favorable offer.[8] Despite counsel's advice to the petitioner to accept the plea offers, the petitioner chose to proceed to trial where he attempted to prove that his actions constituted only robbery in the third degree.[9]

The petitioner acknowledges that he was "fully advised" about the likelihood of being convicted on the robbery in the first degree charge and the maximum potential sentence that he likely faced, but instead, focuses his argument on trial counsel's lack of specific advice on the maximum sentence he could have faced if he had succeeded on the unlikely strategy of proving that he only had committed robbery in the third degree. In doing so, he argues that he was unable to meaningfully weigh his options on whether to proceed to trial without understanding that the maximum sentence at trial on a theory of robbery in the third degree would be "at least as severe" or exceed the sentences of the plea offers initially made to the petitioner. He asserts that his "decision to proceed to trial was influenced highly by trial counsel's flawed advice" to him, characterizing his decision to reject the plea offers and proceed to trial as "irrational and suicidal given the circumstances." The petitioner's argument, however, completely ignores the adequate and accurate advice Ovian did provide him. Ovian's conversations with the petitioner fully apprised him of the reality of his case. Moreover, the court found that Ovian had many discussions with the petitioner throughout the course of his representation, where Ovian properly explained the state's evidence to him, relayed the plea offers to him, and informed him that he faced up to forty-eight and a half years incarceration if he proceeded to trial. Given the circumstances, Ovian advised the petitioner that the plea offers from the state were desirable and that he should accept them. See *Vazquez* v. *Commissioner of Correction*, supra, 123 Conn. App. 437.

While the petitioner may now describe his decision to proceed to trial as "suicidal," that decision was his alone to make. See *Andrews* v. *Commissioner of Correction*, 155 Conn. App. 548, 554, 110 A.3d 489 ("[c]ounsel should not make the decision for the defendant or in any way pressure the defendant to accept or reject the offer" [internal quotation marks omitted]), cert. denied, 316 Conn. 911, 112 A.3d 174 (2015). From the beginning, Ovian's advice to him was unequivocal; he made clear that the petitioner should be prepared for a conviction on the charge of robbery in the first degree should he choose to proceed to trial. And, as counsel had warned, the petitioner was in fact convicted of robbery in the first degree and sentenced to thirty-four years incarceration following his trial. Our case law requires that the petitioner be given "adequate professional assistance, advice, and input" from his counsel and be advised "on the best course of action given the facts of [his] case and the potential total sentence exposure." (Emphasis omitted.) *Barlow* v. *Commissioner of Correction*, supra, 150 Conn. App. 800. On the basis of our review of the record, we conclude that he was provided with just that. We cannot say that Ovian's failure to inform the petitioner of the potential total sentence exposure he faced if he succeeded on the unlikely theory of proving robbery in the third degree or his decision not to further persuade the petitioner to accept the plea offers constituted deficient performance. It also bears noting that the petitioner has cited no relevant cases to support his claim on appeal and presented no evidence at the habeas trial to demonstrate that the prevailing professional norms in Connecticut made it necessary for Ovian to advise the petitioner in the manner he argues. As this court has noted before, trial counsel's decision on "how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness . . . ."[10] (Internal quotation marks omitted.) *Peterson* v. *Commissioner of Correction*, 142 Conn. App. 267, 274, 67 A.3d 293 (2013).

The information and advice provided to the petitioner by trial counsel was adequate for him to make an informed decision as whether to accept the state's plea offers. See *Melendez* v. *Commissioner of Correction*, 151 Conn. App. 351, 359, 95 A.3d 551, cert. denied, 314 Conn. 914, 100 A.3d 405 (2014). Although the petitioner claims he was entitled to further explanation about the consequences of proceeding to trial, he has not demonstrated, as required under the first prong of *Strickland*, that trial counsel's actual explanation and advice fell below an objective standard of reasonableness under prevailing professional norms.[11] See *Strickland* v. *Washington*, supra, 466 U.S. 687–88; *Heredia* v. *Commissioner of Correction*, 106 Conn. App. 827, 836–37, 943 A.2d 1130, cert. denied, 287 Conn. 918, 951 A.2d 568 (2008).

We, therefore, conclude, after a thorough review of the record, that the petitioner failed to establish that the issue he raised is debatable among jurists of reason, that a court could resolve it in a different manner, or that the question he raised is adequate to deserve encouragement to proceed further. Accordingly, we conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] At the habeas trial, Ovian testified that the petitioner had taken a position that the note recovered at the bank was not the note he had written and handed to the teller. Ovian testified that it was the petitioner's position that the note he handed to the teller never indicated that he had a gun, and that the teller had given him back the note prior to his running from the bank and jumping into a river. Gedansky indicated that the petitioner had a theory that the police had invented the note on which the state relied; Gedansky described this as a "conspiracy theory." Ovian also testified that he recalled contacting a handwriting expert to see if his evaluation of the note could give some support to the petitioner's theory. Ovian testified that after the handwriting analyst reviewed a copy of the note, the handwriting analyst indicated to him that he thought it "would not be a good idea to call him as a witness."

[3] Gedansky testified that Ovian was able to persuade him to reduce his initial offer of ten years to serve with five years special parole to ten years to serve with two years special parole.

[4] At the habeas trial, Ovian testified that he recalled there being a "specific discussion of numbers" with the petitioner about his exposure if he was found guilty of robbery in the first degree. He also testified that his notes contained a chart showing that the total exposure the petitioner faced was forty-eight and one-half years, which included the enhancements the petitioner likely faced for committing a crime while he was out on bond and for being a persistent felony offender. Ovian then testified that he could not definitively say that he advised the petitioner on the maximum sentence the petitioner faced if convicted on the lesser included offense of robbery in third degree, but he indicated that he would not have led the petitioner to believe that he would have avoided jail time, especially in light of the conversations they had about the enhancements the petitioner faced.

The petitioner testified that Ovian did not tell him that he may receive a sentence of thirty-four years. He also said that he did not think that Ovian had brought to his attention the potential maximum sentence if he was found guilty on all the charges. The petitioner indicated that had he known that he was going to receive a thirty-four-year sentence, he would not have gone to trial. Additionally, the petitioner testified that he was asking at trial that he be found guilty of robbery in the third degree and felt that the maximum sentence was five years; he testified that Ovian never told him the maximum potential sentence for robbery in the third degree was twenty years. He also testified, though, that he did not recall whether Ovian told him that a five year sentence was a likely outcome.

[5] The petitioner appears to predicate his claim of ineffective assistance of counsel on both the sixth amendment to the United States constitution and article first, §§ 8 and 9, of the Connecticut constitution. Because he has not separately analyzed his state constitutional claim, we address only his claim under the federal constitution. See e.g., *Ham* v. *Commissioner of Correction*, 301 Conn. 697, 702 n.6, 23 A.3d 682, 686 (2011); *State* v. *Melendez*, 291 Conn. 693, 704 n.16, 970 A.2d 64, 72 (2009).

[6] After filing this appeal, the petitioner filed a motion for articulation on April 13, 2017, requesting that the habeas court articulate, inter alia, the factual and legal bases for "whether counsel had a duty to advise the petitioner about his potential and realistic exposure after a trial where he prevailed on his robbery in the third degree theory." The habeas court denied that motion on May 10, 2017, and pursuant to Practice Book § 66-7, the petitioner filed a motion for review in this court challenging the habeas court's denial of his motion for articulation. On July 12, 2017, this court

granted review, but denied the relief requested.

In the petitioner's appellate brief, he appears to renew the arguments he made in his motion for review. He seems to suggest that the record is inadequate for review because the habeas court did not address whether trial counsel's failure to advise the petitioner that "a conviction for robbery in the third degree would very likely result in a sentence at least as high as the offers by the prosecuting authority" constituted deficient performance. We disagree. It is evident from the habeas court's well reasoned decision that it determined that trial counsel's failure to advise the petitioner that a conviction of robbery in the third degree would likely result in a sentence at least as high as the offers by the prosecuting authority did not constitute deficient performance in light of the adequate advice that he did provide the petitioner. Accordingly, we conclude that the record is adequate for our review.

[7] As previously noted, the petitioner took the position that the note he handed to the teller never indicated that he had a gun, and that the teller had given him back the note prior to his running from the bank. In his view, the note on which the state relied was not the note he had written. As such, it was his theory that because he never referenced a gun in the note that he handed the teller, he could be found guilty only of robbery in the third degree. Accordingly, after the petitioner declined to follow his counsel's advice to take the plea offers, Ovian pursued the petitioner's preferred theory at trial that called into question the authenticity of the note, which, if the jury believed, would constitute only robbery in the third degree.

[8] Ovian also testified at the habeas trial that the petitioner believed that the plea deals offered by the state were too high given his poor health, especially "for someone who might not make it." Ovian noted that the petitioner recently had a heart attack and felt like his "life was fleeting."

[9] Ovian testified at the habeas trial that although he disagreed with the petitioner's decision to go to trial, he told him he would do his best to represent him. Accordingly, Ovian decided to pursue a strategy that called into question the authenticity of the note.

[10] In fact, advising the petitioner of the consequence of a robbery in the third degree conviction might only have encouraged his unfounded belief that the state only could prove the lesser offense when the evidence of robbery in the first degree was strong.

[11] Because Ovian did not render deficient performance, we need not reach the prejudice prong of the *Strickland* test. See *Brunetti* v. *Commissioner of Correction*, 134 Conn. App. 160, 172 n.2, 37 A.3d 811, cert. denied, 305 Conn. 903, 44 A.3d 180 (2012).

———————————————————